STATE OF CONNECTICUT *v.* ROBERT M.
LITTLEJOHN
(12159)
(12304)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued February 4—decision released May 13, 1986

*Ralph E. Urban,* certified legal intern, with whom was *Michael R. Sheldon,* for the appellant (defendant).

*Susann E. Gill,* deputy assistant state's attorney, with whom, on the brief, were *Donald B. Caldwell,* state's attorney, and *Abbott B. Schwebel* and *Carl Schuman,* assistant state's attorneys, for the appellee (state).

ARTHUR H. HEALEY, J. The principal issue on this appeal is whether the trial court could properly have

accepted the defendant's plea to a substitute information charging a crime on which the statute of limitations had run. On December 7, 1982, the defendant, Robert Littlejohn, was indicted by a grand jury for the crime of murder in violation of General Statutes § 53a-54a. On May 19, 1983, after a trial to the jury, the defendant was found guilty of murder and sentenced on June 21, 1983, to eighteen years to life. This appeal followed.[1]

Certain additional background circumstances are properly set out at this point. The defendant was arrested on November 9, 1982, in connection with the April 8, 1977 death of Clark Burtt and was thereafter indicted by the grand jury. On April 27, 1983, the trial court, *Kelly, J.,* denied his motion to dismiss which alleged prejudicial pretrial delay. During jury selection and as a result of negotiations between the state and defense counsel, the state filed a substitute information on May 10, 1983, charging the defendant with the crime of manslaughter in the second degree with a firearm in violation of General Statutes § 53a-56a.[2] Prior

---

[1] The defendant appeals from the judgment of conviction, Docket No. 12304, and has assigned as error the trial court's actions in refusing to permit him to waive the statute of limitations in order to plead to the substitute information of May 10, 1983. The defendant also filed an interlocutory appeal before trial based upon this refusal by the trial court to permit him to plead to the substitute information. Because we dispose of this statute of limitations claim in Docket No. 12304, we dismiss Docket No. 12159 as moot and also as prematurely taken prior to the rendition of a final judgment.

[2] General Statutes § 53a-56a provides in part: "(a) A person is guilty of manslaughter in the second degree with a firearm when he commits manslaughter in the second degree as provided in section 53a-56, and in the commission of such offense he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, rifle, machine gun or other firearm. . . ."

General Statutes § 53a-56 provides in part: "(a) A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person; or (2) he intentionally causes or aids another person, other than by force, duress or deception, to commit suicide. . . ."

to filing the substitute information, the state informed the court, *Byrne, J.,* on May 10, 1983, that it was being filed only after discussions with defense counsel which had extended over the prior week and that the state "has an obligation to conform to what we had discussed with counsel concerning disposition of this case." At the same time, the state indicated that the court "may feel compelled to bring forth the problem of waiver . . . concerning the statute of limitations, and as a result of that, to my understanding that counsel [for the defendant] will be filing a waiver to that statute of limitations defense." At that point, the defendant's counsel offered to show the waiver form to the court which he represented the defendant would sign in open court. Later in this colloquy defense counsel said that the defendant had signed the waiver he presented in open court. The court said that counsel "may do as you want with those documents, but as the Court has informed counsel that unless shown to the contrary, the only charge applicable here is murder, because any—there won't be any lesser included offenses because . . . the statute of limitations [has] run on any lesser included offenses for manslaughter in the first degree through negligent homicide. So, obviously, the court would not charge on them. . . . " Observing that it had been shown nothing to alter its position, the court said that it would not accept "a plea based on the voluntary waiver by a defendant of the statute of limitations in absolute defense."

Later in the same colloquy, after arguing the waivability of the statute of limitations, the defendant's counsel tried to ascertain what had happened procedurally with the information "which the state has filed." The court indicated that it was "[j]ust in the file, because the Court is not going to accept the plea . . . not on the charge where the statute of limitations is run." The defendant excepted to the ruling and jury selection continued.

On May 11, 1983, the defendant's counsel asked for
a "clarification of yesterday's ruling regarding the sub-
stituted information filed by the [state]." He explicitly
asked whether the court's position was that, because
the statute of limitations had run on any lesser included
offenses, the court would not entertain or accept a plea
to the substitute information. After some discussion
of *State* v. *Paradise,* 189 Conn. 346, 456 A.2d 305
(1983), and a reiteration that the statute of limitations
had run on all the lesser included offenses, the court
adhered to its earlier ruling saying that it would not
accept a guilty plea because the defendant could not
be found guilty of the charge in the substitute infor-
mation.

On May 12, 1983, the defendant's counsel informed
the court that he had filed an interlocutory appeal from
the court's decision not to permit a plea to the substi-
tute information and he moved for a stay under Prac-
tice Book § 3068 pending a decision by this court on
that interlocutory appeal. The court asked the basis for
this interlocutory appeal, opining correctly, inter alia,
that it was not taken from a final judgment. Counsel,
agreeing that the court had the prerogative to refuse
to accept a plea and not to agree with the state's recom-
mendation on the substitute information, maintained
that the court had the "requirement" and a "respon-
sibility" to arraign the defendant on the substitute
information and not cut the process off prior to even
permitting a plea. Although he also argued that to do
so forced the defendant to trial, thus removing his abil-
ity to perfect an arrangement that both he and the state
felt was to their mutual advantage, the court denied
his request. After the court stated that it would not
permit the defendant to plead to the substitute infor-
mation,[3] the defendant's counsel inquired: "Well, on

---

[3] In declining to arraign the defendant on the substitute information, the
court said: "Mr. Seligson, I'm not going to go through the useless act of

what basis would Your Honor not accept the plea, on the basis of the Statute of Limitations?" The court replied: "That's one, and I—and many other bases that the Court has the prerogative in not accepting a plea. And you know that."

On appeal from his conviction, the defendant claims that the trial court erred in refusing to entertain the defendant's plea of guilty to the substitute information charging manslaughter in the second degree with a fire-arm in violation of General Statutes § 53a-56a because of its conclusion that the defendant could not waive the defense of the statute of limitations to that crime. The defendant additionally claims that the trial court erred in admitting certain testimony of the defendant's former wife and in denying his motion to dismiss which was based on prejudicial prearrest delays.

The defendant's claims on the issue of the statute of limitations, although multifaceted, are essentially that the language, structure and purpose of the statute of limitations, i.e., General Statutes § 54-193,[4] support its waivability as does judicial construction and interpre-tation of limitations statutes. Nearly all jurisdictions presented with this question have held that criminal defendants may waive the statute when it is in their best interest to do so. The defendant claims, therefore, that the trial court's refusal to honor the valid waiver

---

having the substituted information read—your client, whatever he's going to do with it, and then me going through a question and answer period and at the end of it saying I'm not going to accept the plea and then go back to the original information or indictment. I'm not going to do that. That's— That's just a waste of the Court's time."

[4] General Statutes § 54-193 provides in relevant part: "(b) No person may be prosecuted for any offense, except a capital felony or a class A felony, for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed. No person may be prosecuted for any other offense, except a capital felony or a class A felony, except within one year next after the offense has been committed."

proffered was erroneous as was its consequent rejection of his negotiated plea of guilty. Because of the erroneous action of the trial court, the defendant claims that his conviction of murder should be vacated and the case remanded with instructions that a guilty plea be entered pursuant to his plea agreement with the state.

The state concedes, in its brief, that the trial court erred insofar as it refused to accept the defendant's waiver of the statute of limitations but argues that that concession does not mandate the reversal of his murder conviction with direction to accept the proffered plea to the substitute information. At most, it argues, a remand for further articulation and further proceedings is necessary. It asserts generally that the state of the record requires such a remand pointing out, inter alia, that neither the recommendation nor the bargain that the state is claimed to have made is on the record. In addition, it notes that the court's statements do not "suggest," contrary to the defendant's claim, that the court's refusal to take a plea was solely because of the statute of limitations. Maintaining that the "most likely interpretation" of the record is that the trial court "rejected the plea 'regardless of the statute of limitations' " and given the uncontested right of the court to reject a plea bargain, the state concludes that the refusal to permit a waiver of the statute of limitations had "no material effect on the outcome of the case." Therefore, the state claims that because the defendant did not seek to clarify the record, a "proper reading of the record" demonstrates no prejudice to the defendant and, accordingly, the judgment of conviction should stand.

Alternatively, the state argues for a remand for further articulation of the "precise basis of the trial court's rejection of the defendant's plea" without immediately vacating the judgment of conviction. If, the state

claims, upon articulation the trial court specifies that its disallowance of the defendant's plea was based at least in part on its disagreement with the terms of the plea bargain, then this court should find no error on this issue. If, however, the trial court makes clear that its ruling was based solely on the nonwaivability of the statute, further proceedings must take place on remand to determine if harmful error took place. The principal issue in such proceedings, the state contends, is whether the trial court would have accepted the plea "but for" the bar of the statute of limitations. Evidence would be required concerning the precise terms of the arranged plea agreement. If the original trial judge "specifies" that he would have accepted this plea agreement "but for" the bar of the statute, then the state agrees with the defendant that this court should vacate his murder conviction and order the acceptance of the original plea proffered by the defendant. On the other hand, the state argues that if the original trial judge "specifies" that even if he had reached the plea agreement, he would not have accepted it, then this court should not reverse the judgment of conviction unless the defendant can show that the trial judge's "refusal to accept the plea represented a manifest abuse of discretion." Even if the remand discloses that the original decision was based solely on the statute of limitations issue and, additionally, if the trial judge "specifies" that he would not have accepted the original plea bargain, the defendant, according to the state, should not be given the opportunity to enter an "unconditional, non-plea bargained plea of guilty" to manslaughter in the second degree with a firearm. To do so would put him, the state argues, in a better position than he would have been but for the claimed erroneous ruling on the statute of limitations.

We start our analysis by recognizing that the state agrees that the defendant's written waiver of the stat-

ute of limitations, made voluntarily and intelligently and with the assistance of counsel, was a valid waiver of the statute. This incorporates the defendant's claim that the statute is waivable and not jurisdictional. While these agreements are helpful, they do not relieve this court of its obligation to determine whether the protection afforded a criminal defendant by the statute of limitations set out in General Statutes § 54-193 may be validly waived. We conclude that it may be waived.

Many courts have addressed the question of the waivability of the statute of limitations as dependent upon whether the statute is to be regarded as jurisdictional or as an affirmative defense. See *United States* v. *Wild,* 551 F.2d 418, 424 (D.C. Cir.), cert. denied, 431 U.S. 916, 97 S. Ct. 2178, 53 L. Ed. 2d 226 (1977); *Padie* v. *State,* 594 P.2d 50 (Alaska 1979); *Tucker* v. *State,* 417 So. 2d 1006 (Fla. App. 1982). There are courts which have treated the statute as jurisdictional and thus nonwaivable. See, e.g., *Waters* v. *United States,* 328 F.2d 739 (10th Cir. 1964); *Benes* v. *United States,* 276 F.2d 99 (6th Cir. 1960); *State* v. *Fogel,* 16 Ariz. App. 246, 492 P.2d 742 (1972); *Duncan* v. *State,* 282 Md. 385, 384 A.2d 456 (1978); *State* v. *Stillwell,* 175 N.J. Super. 244, 418 A.2d 267 (1980); *Cleveland* v. *Hirsch,* 26 Ohio App. 2d 6, 268 N.E.2d 600 (1971); *Cunningham* v. *District Court of Tulsa County,* 432 P.2d 992 (Okla. Crim. App. 1967); *John* v. *State,* 89 Wis. 2d 214, 278 N.W.2d 235 (1979), aff'd, 96 Wis. 2d 183, 291 N.W.2d 502 (1980). Some courts treat the statute as an affirmative defense, which must be asserted at or before trial, and is thus waivable. See, e.g., *United States* v. *Walsh,* 700 F.2d 846 (2d Cir.), cert. denied, 464 U.S. 825, 104 S. Ct. 96, 78 L. Ed. 2d 102 (1983); *United States* v. *Williams,* 684 F.2d 296 (4th Cir. 1982), cert. denied, 459 U.S. 1110, 103 S. Ct. 739, 74 L. Ed. 2d 961 (1983); *United States* v. *Levine,* 658 F.2d 113 (3d Cir. 1981); *United States* v. *Akmakjian,* 647 F.2d 12 (9th Cir.), cert. denied, 454

U.S. 964, 102 S. Ct. 505, 70 L. Ed. 2d 380 (1981); *United States* v. *Doyle,* 348 F.2d 715 (2d Cir.), cert. denied, 382 U.S. 843, 86 S. Ct. 89, 15 L. Ed. 2d 84 (1965); *Padie* v. *State,* supra; *People* v. *Williams,* 79 Ill. App. 3d 806, 398 N.E.2d 1013 (1979); *People* v. *O'Neil,* 107 Misc. 2d 340, 433 N.Y.S.2d 977 (1980); *Commonwealth ex rel. Patterson* v. *Ashe,* 154 Pa. Super. 397, 36 A.2d 249 (1944); see case comment, "Waiver of the Statute of Limitations in Criminal Prosecutions: *United States* v. *Wild,*" 90 Harv. L. Rev. 1550 (1977); comment, "The Statute of Limitations in a Criminal Case: Can it be Waived?" 18 Wm. & Mary L. Rev. 823 (1977). Years ago, the United States Supreme Court indicated that "[t]he statute of limitations is a defense and must be asserted on the trial by the defendant in criminal cases . . . ." *Biddinger* v. *Commissioner of Police,* 245 U.S. 128, 135, 38 S. Ct. 41, 62 L. Ed. 193 (1917). Courts have cited *Biddinger* for the proposition that the statute is an affirmative defense waived unless asserted at trial. See, e.g., *United States* v. *Minor,* 756 F.2d 731, 737 (9th Cir. 1985); *United States* v. *Walsh,* supra, 855–56.

We think that the more acceptable and better reasoned approach is not to treat the statute of limitations as jurisdictional and hence nonwaivable but as an affirmative defense and hence waivable. In doing so, we incline to the position that, although the protection is given to a criminal defendant by a statute, it is in the nature of a "substantive right," extending, where timely asserted, immunity from prosecution. See *United States* v. *Gulf Oil Corporation,* 408 F. Sup. 450, 455 (W.D. Pa. 1975); *United States* v. *Haramic,* 125 F. Sup. 128 (W.D. Pa. 1954); 22 C.J.S., Criminal Law § 223, p. 574.

A leap of logic is not required to maintain that if an accused can waive constitutional rights, he certainly can waive one conferred by the statute of limitations;

*United States* v. *Wild,* supra, 424 (knowing and intelligent waiver of statute of limitations is valid); nor is it in derogation of the policy behind the statute to permit him to do so. See *Toussie* v. *United States,* 397 U.S. 112, 114–15, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970).

Analogy to civil statutes of limitation, which go to the remedy only, is fragile because, by contrast, criminal statutes of limitations create a bar to the prosecution of the defendant. The purposes of the latter are more comprehensive because not only are the interests of the defendant involved, but also those of society and the criminal justice system, to which legislative and judicial concerns are geared. See comment, "The Statute of Limitations In a Criminal Case: Can It Be Waived?" supra, 837. Criminal statutes of limitation fairly "represent legislative assessments of relative interests of the State and the defendant in administering and receiving justice . . . ." *United States* v. *Marion,* 404 U.S. 307, 322, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971). Any waiver of the statute must, of course, be voluntary and intelligent and a waiver presents a question of fact in each case. *United States* v. *Wild,* supra; *United States* v. *Levine,* supra, 120 n.8; see *Johnson* v. *Zerbst,* 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).

We now turn to the refusal of the trial court to put the defendant to plea upon the substitute information. This opportunity should have been given the defendant because he did have the right to waive the statute of limitations. The defendant did not claim at trial, as he admits, that he had the right to have the trial court accept his plea to the substitute information or the right to have that court, if it accepted his plea, accept the negotiated plea bargain.[5] He did, however, have the right to plead to the substitute information.

---

[5] On appeal, the defendant argues that the remand, if error is found on the issue of the statute of limitations, should be that "the case [be remanded]

The state could file the substitute information in the circumstances of this case linked as it was with the defendant's concededly valid waiver of the statute of limitations. The state did not remonstrate at trial that it, as well as the defendant, would be mutually advantaged by a plea to the substitute information and the accomplishment of the plea bargain. There is nothing in this record, however, that rebuts the accepted presumption that a state's attorney will do his duty. *State* v. *Lenihan,* 151 Conn. 552, 555, 200 A.2d 476 (1964); *State* v. *Zimnaruk,* 128 Conn. 124, 127, 20 A.2d 613 (1941). Had the trial court recognized that the statute of limitations was waivable, then the filing of the substitute information would have acted to supersede the grand jury indictment.[6] See generally *State* v. *DiBella,* 157 Conn. 330, 336, 254 A.2d 477 (1968); 42 C.J.S., Indictments and Informations § 78. It is fair to say that the state did not wish to institute the dismissal of the grand jury indictment prior to a reasoned indication from the trial court that it might be amenable to a guilty plea on the substitute information. This appeared practical, given the express views of the trial court, even though our law is clear that "the state, in the exercise of its prosecutorial function, has considerable latitude as to how and in what manner it shall proceed against an accused"; *State* v. *Zeko,* 176 Conn. 421, 423, 407 A.2d 1022 (1979); *State* v. *Villafane,* 171 Conn. 644, 664, 372 A.2d 82 (1976), cert. denied, 429 U.S. 1106, 97 S. Ct. 1137, 51 L. Ed. 2d 558 (1977); *State* v. *Townsend,* 167 Conn. 539, 554, 356 A.3d 125, cert. denied, 423

with instructions that a guilty plea be entered pursuant to his plea agreement with the state." Our remand will not so order. One of the matters the defendant overlooks is that his plea bargain with the state does not appear in the record.

[6] We can assume, without deciding, that such a superseding substitute information in this case would not have prevented or precluded a subsequent presentment of the defendant on the charge of murder in which there is no statute of limitations if either the proffered guilty plea or the negotiated plea bargain were not accepted by the trial court.

U.S. 846, 96 S. Ct. 84, 46 L. Ed. 2d 67 (1975); "in any particular situation." *State* v. *Chetcuti,* 173 Conn. 165, 168, 377 A.2d 263 (1977); see *State* v. *Nardini,* 187 Conn. 109, 113–15, 445 A.2d 304 (1982) (powers and duties of the office of state's attorney reviewed). Such latitude, including the reasoned initiation, prosecution and disposition of cases by the office of the state's attorney, is cognizable under both common law and statute. See, e.g., *United States* v. *San Jacinto Tin Co.,* 125 U.S. 273, 279, 8 S. Ct. 850, 31 L. Ed. 747 (1888); *State* v. *Nardini,* supra. So long as the prosecutor acts within the jurisdiction of his office, as here, it is not appropriate for a court to set any policy for the performance of his prosecutorial function. See *State* v. *McKenna,* 188 Conn. 671, 680, 453 A.2d 435 (1982); *State* v. *Haskins,* 188 Conn. 432, 474, 450 A.2d 828 (1982). The trial court, therefore, should have permitted the defendant to plead to the substitute information.

It remains, on this issue, to articulate the remand which we have determined is required. In remanding, we regard the defendant's waiver of the statute of limitations to the crime charged in the substitute information, i.e., General Statutes § 53a-56a ("manslaughter in the second degree with a firearm") as ongoing and the plea bargain negotiated in 1983, during jury selection, to the substitute information as extant. The plea bargain should have been placed explicitly on the record back in 1983 but the circumstances set out earlier disclose why the process never progressed to that point.

This case is remanded to the trial court, *Byrne, J.,* with direction to permit the defendant to plead guilty to the substitute information upon finding that the plea is knowingly and voluntarily made and has a factual basis under such cases as *Boykin* v. *Alabama,* 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and *State* v. *Lasher,* 190 Conn. 259, 265, 460 A.2d 970 (1983). In the event that the guilty plea is accepted and

the trial court can reasonably determine that it will sentence the defendant in accordance with the negotiated plea bargain, then immediately prior to such sentencing it is ordered that the 1983 conviction of murder be vacated and set aside. We are aware, of course, that there is no absolute right to have a guilty plea accepted and that a trial court may reject a plea in the exercise of its sound discretion. See, e.g., *Lynch* v. *Overholser*, 369 U.S. 705, 719, 82 S. Ct. 1063, 8 L. Ed. 2d 211 (1962). In addition, when the state and the defendant have agreed on a proposed disposition, the trial court must identify on the record good reasons if it does not follow that course. *Hockaday* v. *United States*, 359 A.2d 146, 148 (D.C. App. 1976), and cases cited therein. When a guilty plea is induced by promises arising out of a plea bargaining agreement, fairness requires that such promises be fulfilled by the state. See, e.g., *Santobello* v. *New York*, 404 U.S. 257, 261, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). The same concept of fairness ordinarily impels the court, in its discretion, either to accord specific performance of the agreement or to permit the opportunity to withdraw the guilty plea. In this case, we also order that if the trial court accepts the guilty plea but later rejects the sentencing recommendation portion of the plea bargain then, in that event, assuming the defendant does not seek to withdraw his plea, we order that the 1983 conviction of murder be set aside and that the court nevertheless sentence the defendant under the substitute information. If the plea is withdrawn, of course, there would be no reason to set aside the judgment because the defendant would not have been prejudiced by the refusal of the court to permit him to plead to the substitute information.[7]

---

[7] We have not overlooked the fact that the substitute information charges a crime which is not a lesser included offense of that charged in the grand jury indictment.

We will discuss the defendant's two remaining claims of error which must be resolved in the event that the defendant either elects not to plead guilty to the substitute information or elects to withdraw his plea of guilty to the substitute information after that plea has been accepted by the trial court but the sentencing recommendation portion of the plea bargain has not been accepted by that court. The defendant first claims that the trial court erred in denying his pretrial motion to dismiss the murder charge in April, 1983,[8] which was based on alleged prejudicial prearrest delay. This denial, he claims, denied him his due process rights. We do not agree with the defendant.

At the trial in 1983, the defendant, who was then twenty-three years old, testified in his own defense saying that he did not "recall anything at all" about Good Friday, April 8, 1977, the day of the Burtt homicide despite his efforts to do so. He argues that he has met his burden of showing prejudice because of the delay as he was unable to recall the events of that day "so as to perhaps be able to come forward with alibi witnesses." The state maintains that he did not demonstrate the prejudice required to prevail and that the claim is based on speculation.

"The role of due process protections with respect to pre-accusation delay has been characterized as a 'limited' one. *United States* v. *Lovasco,* 431 U.S. 783,

[8] The defendant's motion to dismiss was as follows:

"The Defendant in the above entitled action, based upon the Fifth and Fourteenth Amendments of the United States Constitution and the Constitution of the State of Connecticut hereby respectfully requests that the charges pending against him be dismissed. In support of this the Defendant presents the following:

"1. The crime of which he is accused occurred on April 8, 1977.

"2. The Defendant was arrested on November 9, 1982 pursuant to a warrant issued on November 9, 1982.

"3. As a result of the excessive delay between the time of the offense charged and the arrest, the Defendant has been [compromised] in his ability to present a defense thereby depriving him of due process of law.

"WHEREFORE, the Defendant respectfully requests that the charges against him be dismissed."

789, 97 S. Ct. 2044, 52 L. Ed. 2d 752 (1977)." *State v. Morrill,* 197 Conn. 507, 521, 498 A.2d 76 (1985). In *Lovasco,* the United States Supreme Court said that it had "to determine only whether the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions' . . . and which define 'the community's sense of fair play and decency . . . .' " *United States* v. *Lovasco,* supra, 790. While ordinarily the statute of limitations is the only protection afforded a defendant against the institution of stale criminal charges; *United States* v. *Marion,* supra; it is not significant on this claim of error because it attacks delay in a charge of murder on which there is no statute of limitations. The due process clause does, however, "[become] implicated where substantial prejudice from such delay has resulted and the delay was for the purpose of gaining a tactical advantage over an accused. [*United States* v. *Marion,* supra]." *State* v. *Carrione,* 188 Conn. 681, 693–94, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983). We have also said that a defendant, to demonstrate a denial of due process, "must show that actual significant prejudice to him has resulted." *Parham* v. *Warden,* 172 Conn. 126, 134, 374 A.2d 137 (1976).

Only recently have we reiterated in *Morrill* that "[i]n order to establish a due process violation because of pre-accusation delay, the defendant must show both that actual substantial prejudice resulted from the delay and that the reasons for the delay were wholly unjustifiable, as where the state seeks to gain a tactical advantage over the defendant. *State* v. *Carrione,* [supra]; see also *Stoner* v. *Graddick,* 751 F.2d 1535, 1542 (11th Cir. 1985); *United States* v. *Puett,* 735 F.2d 1331, 1334 (11th Cir. 1984); *United States* v. *DiMuro,* 540 F.2d 503, 516 (1st Cir.), cert. denied, 429 U.S. 1038, 97 S. Ct. 733, 50 L. Ed. 2d 749 (1976). '*Marion* makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due pro-

cess inquiry must consider the reasons for the delay as well as the prejudice to the accused.' *United States* v. *Lovasco,* supra, 790." *State* v. *Morrill,* supra, 522.

On August 1, 1977, the Stafford Springs police department closed this case and ruled the death a "suicide." In August, 1980, the Connecticut state police reopened their investigation as a result of which a grand jury indictment was presented. It would appear that the reopened investigation produced, inter alia, at least two written statements from James C. Waugh, Jr., a friend of the defendant, which later became full exhibits at the trial. One was dated January 2, 1980, and in it Waugh stated that "about a month after Clark Burtt was found dead" the defendant said he had shot him.[9] A more detailed statement from Waugh, dated October 11, 1982, said that Waugh witnessed the defendant shoot Burtt. Both Waugh and Lynwood Pipkin[10] testified at the trial that they saw the defendant shoot the victim. It is apparent that the reopened investigation took some time and it has not been shown that any delay in the arrest was to secure a tactical advantage. *State* v. *Morrill,* supra. Additionally, we cannot find in this record that the defendant has shown, as he must, "actual substantial prejudice." *State* v. *Morrill,* supra.

We now take up the defendant's claim that the trial court erred in permitting the defendant's former wife to testify, over his objection, to his confidential communications to her. The defendant stated that he did

---

[9] Waugh testified at the trial and his testimony from the transcript fairly read presented some inconsistencies upon which he was closely cross-examined.

[10] Upon the completion of Pipkin's direct examination, the transcript discloses that the state handed to defense counsel two statements, presumably of Pipkin, one dated August 24, 1979, and another dated September 9, 1982. Neither of these statements became full exhibits. Pipkin and Waugh each had a prior felony record.

not make any claim under General Statutes § 54-84a,[11] the so-called "spousal privilege," which he claimed went to competency and was "completely irrelevant to this issue." Rather, he maintained that the anticipated evidence was within the confidential communications privilege of the marital relationship, which was distinct from the privilege in § 54-84a and that such confidentiality was presumed and that it survived the 1981 divorce[12] of the defendant and his former wife, Lorna Hargrove. The state contended that § 54-84a controlled and that thereunder the decision to testify or not was vested in the witness' wife.

After a voir dire of Hargrove, during which she said that the defendant told her about the Burtt killing, "maybe 25 or 30 [times], something like that. I'm not sure," including once in front of his sister and once when Waugh was present, the trial court ruled that her testimony was admissible. At that time, she also said that she would get upset when he told her that he did it, and then only after she would ask him to tell her "on his word of honor" or "[his] love for [her]" would he say that he did not do it. When she testified in the presence of the jury, she said the matter came up "roughly around maybe 30 times, around" and that the

[11] General Statutes § 54-84a, entitled "Privilege of spouse," provides: "If any person on trial for crime has a husband or wife, he or she shall be a competent witness but may elect or refuse to testify for or against the accused, except that either spouse who has received personal violence from the other or is the spouse of one who is charged with violation of any of sections 53-20, 53-21, 53-23, 53-25, 53-304, 53a-70, 53a-70a, 53a-71 and 53a-83 to 53a-88, inclusive, may, upon his or her trial for offenses arising out of such personal violence or from violation of the provisions of any of said sections, be compelled to testify in the same manner as any other witness."

[12] The defendant and Lorna Omer were married on August 5, 1977, separated in December, 1980, and divorced in November, 1981. At the time of the trial, she was remarried and was known as Lorna Hargrove. There was no evidence that any of the alleged confidential communications were made before or after the marriage.

story always ended with him "joking" or "kidding." She also testified at that time that he said this once in front of his sister as well as once when Waugh was present. Again, she reiterated that it would upset her and when she would ask him to tell her the truth "on his love for [her]," he would tell her that he was only joking.

We have never explicitly held that confidential communications between husband and wife are privileged under the common law of this jurisdiction. Our early case of *State v. Hoyt*, 47 Conn. 518 (1880), strongly suggests that the *Hoyt* court felt that there was such a privilege. See *State v. Hoyt*, supra, 540.[13] The later case of *Spitz's Appeal from Commissioners*, 56 Conn. 184, 14 A. 776 (1887), clearly hypothesizes such a privilege. Such a privilege commends itself to judicial acceptance.[14] We resolve this claim of error on the theory on which it was tried and upon which the trial court

---

[13] In *State v. Hoyt*, 47 Conn. 518 (1880), the defendant husband was charged with the murder of his father. At the trial, the state had "possession of several letters written by the defendant to his wife, (how obtained or whether they were ever in the wife's possession did not appear)," which were offered into evidence by the state as containing admissions inconsistent with the defendant's testimony in court with his insanity claim. Id., 540. The court admitted them over the defendant's objection that they were confidential communications between husband and wife.

On appeal, this court found that doing so "violated no rule of evidence" and went on to say: "The question was not whether the husband or wife could have been compelled to produce the evidence, but whether, when the letters fell into the hands of a third person, *the sacred shield of the privilege went with them*. We think not. 1 Greenl. Ev., § 284a. . . . " (Emphasis added.) Id.

The citation to Professor Greenleaf's treatise by the *Hoyt* court is provocative in view of the fact that Greenleaf had earlier, in 1842, announced the existence of a "distinct privilege [apart from marital status] for marital communications . . . ." McCormick, Evidence (3d Ed. 1984) § 78, pp. 188–89.

[14] Professor Wigmore's position that the policy which should lie at the basis of every rule of privileged communications "appears to be satisfied in the privilege for communications between husband and wife" is appealing. That policy is that (1) the communications originate in confidence,

650

decided it. See, e.g., *Fuessenich* v. *DiNardo,* 195 Conn. 144, 151, 487 A.2d 514 (1985). Although the confidential communications involved may have been admitted in error, any error was harmless. We hasten to point out that, in any event, those communications stated by the defendant to his then-wife in the presence of either his sister or Waugh could not be considered confidential so as to fall within such a privilege. See, e.g., *Pereira* v. *United States,* 347 U.S. 1, 6, 74 S. Ct. 358, 98 L. Ed. 435 (1954); *Gutridge* v. *State,* 236 Md. 514, 204 A.2d 557 (1964) (defendant in jail sent oral message to wife by a trusty); see *United States* v. *Pensinger,* 549 F.2d 1150, 1153 (8th Cir. 1977); 81 Am. Jur. 2d, Witnesses § 155; note, "Husband-Wife Privilege," 33 Conn. B.J. 182, 186 (1959). *Pereira* points out that "[a]lthough marital communications are presumed to be confidential, that presumption may be overcome by proof of facts showing that they were not intended to be private. . . . The presence of a third party negatives the presumption of privacy. Wigmore, Evidence, § 2336." *Pereira* v. *United States,* supra. According to Hargrove's testimony, at least two of the claimed confidential communications were to separate third parties and therefore no error can be predicated on either of them; this alone would serve to make any error as to the others harmless. "A judgment need not be reversed merely because inadmissible evidence has been admitted, if permissible evidence to the same effect has also been placed before the jury." *State* v. *Barber,* 173 Conn. 153, 160, 376 A.2d 1108 (1977); see also *State* v. *Dolphin,* 195 Conn. 444, 454–55, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d 84 (1985); *State* v. *Randolph,* 190 Conn. 576, 589–90, 462

(2) the confidence is essential to the relation, (3) the relation is a proper object of encouragement by the law, and (4) the injury that would inure to it by disclosure is probably greater than the benefit that would result in the judicial investigation of the truth. 8 Wigmore, Evidence (McNaughton Rev.) § 2332, p. 642.

A.2d 1011 (1983); *State* v. *Piskorski,* 177 Conn. 677, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Jeustiniano,* 172 Conn. 275, 283, 374 A.2d 209 (1977).

This matter is remanded to the trial court, *Byrne, J.,* for proceedings not inconsistent with this opinion.

In this opinion the other judges concurred.