STATE OF CONNECTICUT *v.* BRUCE HARRISON
(10980)

DUPONT, C. J., O'CONNELL and HEIMAN, Js.

Argued February 22—decision released May 24, 1994

State *v.* Harrison

*Lauren Weisfeld,* assistant public defender, for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Mary Reidy,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a[1] and two counts of injury or risk of injury to, or impairing the morals of, a child in violation of General Statutes § 53-21.[2] On appeal, the defendant asserts that the trial court improperly (1) refused to admit evidence of prior sexual conduct by the victim under an exception to the rape shield law,

---

[1] General Statutes § 53a-73a (a) provides: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age, or (B) mentally defective or mentally incapacitated to the extent that he is unable to consent to such sexual contact, or (C) physically helpless, or (D) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare, or (E) in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over such other person; or (2) such person subjects another person to sexual contact without such other person's consent, or (3) such person engages in sexual contact with an animal or dead body."

[2] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be [punished]."

General Statutes § 54-86f,[3] (2) denied him a continuance to prepare his defense after the state filed a substitute information against him substantially changing the allegations against him, (3) permitted state witnesses to testify as to the ultimate issue of fact presented by the case, (4) denied him access to certain records of the department of children and youth services (DCYS),[4] and (5) failed to dismiss one count of the information that was barred by the statute of limitations. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. The defendant first sexually assaulted the victim when she was about three years old. The defendant would come into the bathroom while the victim was bathing, and would "feel her all over" and try to get

---

[3] General Statutes § 54-86f provides: "In any prosecution for sexual assault under sections 53a-70, 53a-70a, and 53a-71 to 53a-73a, inclusive, no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. Such evidence shall be admissible only after a hearing on a motion to offer such evidence containing an offer of proof. On motion of either party the court may order such hearing held in camera, subject to the provisions of section 51-164x. If the proceeding is a trial with a jury, such hearing shall be held in the absence of the jury. If, after hearing, the court finds that the evidence meets the requirements of this section and that the probative value of the evidence outweighs its prejudicial effect on the victim, the court may grant the motion. The testimony of the defendant during a hearing on a motion to offer evidence under this section may not be used against the defendant during the trial if such motion is denied, except that such testimony may be admissible to impeach the credibility of the defendant if the defendant elects to testify as part of the defense."

[4] The department of children and youth services was renamed the department of children and families. Public Acts 1993, No. 93-91, § 1.

on top of her. The defendant in later years reminded the victim that he had been "doing it to [her] since [she was] three." When the victim was between five and eight years old, the defendant would come into her bedroom, touch her and try to get on top of her. He also pulled down her clothing and tried to touch her with his penis.

After the family moved, the victim began to share a room with her younger sister. At that time, the defendant would wait until everyone was asleep, come into the victim's bedroom, remove her clothing and get on top of her. He began attempting to insert his penis into the victim's vagina, but he was unable to do so even though he exerted force. Some of these events occurred during the day when the victim's mother was at work. The defendant would place the victim's two younger sisters in the bathtub to occupy them while he committed these acts on the victim. These assaults occurred three or four times a week.

When the victim was about ten years of age, the family moved again. At that time, the victim's mother worked from 3:30 until 9 p.m. and the victim was responsible for overseeing her sisters. Although the defendant had his own apartment at the time, he also had a key to the apartment occupied by the victim and her family, and usually stayed at that apartment. The defendant followed the practice of putting the younger girls in the bathtub, forcing them to take a nap or sending them outside while he molested the victim. In 1987, the victim told her father's girlfriend that she was being sexually molested by the defendant. At that time, the victim also spoke with a member of the New Haven police department and stated that she was being sexually abused. About a week later, after being assured by her mother that the defendant would not bother her again, the victim recanted her prior complaint. At the time that she recanted, the defendant had moved out

of the apartment occupied by the victim and her family. Shortly after she recanted, the defendant moved back in with the victim and her family and resumed his abuse of the victim.

On April 7, 1989, the victim confided in a school friend that she was being sexually assaulted by her mother's boyfriend. The victim also told this to several adults at school including Gail Guy, a guidance counselor, and Delores Dinnean, a school nurse. Although this misconduct had occurred over a period of years, she spoke out at this time because she was afraid to go home from school. On the previous evening, a male friend, in whom she had also confided, telephoned the victim's mother and advised her that the defendant had been sexually abusing the victim. When the victim's mother learned of the misconduct, she appeared to be angry, not only with the defendant, but with the victim as well. The victim's fear was that her mother would not believe that the sexual abuse had occurred. The defendant had told the victim not to tell her mother because the mother would believe his denials and that the victim would be placed in a home. In addition to telling Guy and Dinnean, the victim also described the defendant's misconduct to Gloria Jetter, a DCYS investigator, Detective Peter Marone of the New Haven police department, Diane Pelazza, a pediatric social worker at the Yale-New Haven Hospital Sexual Abuse Clinic, and John Leventhal, an associate professor of pediatrics at Yale-New Haven Hospital and the medical director of the Sexual Abuse Clinic and of the Child Abuse Program. Each of these witnesses testified as constancy of accusation witnesses.

The defendant testified in his own behalf denying the charges made against him. He offered testimony concerning his rigorous work schedule over the period of time at issue. His former employer also testified as to his work schedule. The defendant offered character evi-

dence concerning his honesty, reliability and trustworthiness. Finally, the defendant offered the testimony of Stephen Herman, a psychiatrist, who had not examined or interviewed the victim, but who testified that some children distort and lie about sexual abuse claims. The jury found the defendant guilty.

I

The defendant claims that the trial court improperly prohibited him from pursuing certain lines of inquiry when the evidence sought to be adduced was admissible under an exception to General Statutes § 54-86f[5] thereby denying him his constitutional rights to confrontation and to present a defense. We disagree.

Certain additional facts are necessary for a proper resolution of this issue. Prior to the commencement of the evidence, the state filed a motion in limine seeking, inter alia, to preclude the defendant from introducing any evidence of and from cross-examining the complainant as to her sexual conduct unrelated to conduct with the defendant. In support of the motion, the state invoked the protection of the provisions of General Statutes § 54-86f contending that any such evidence would not meet any of the exceptions under the statute by which such evidence would be rendered admissible. At the time the motion was argued, the defendant asserted that he did not intend to cross-examine the victim with respect to any prior sexual conduct, but that he might call other witnesses as to that issue. The motion in limine was granted.

The victim testified as to acts of sexual misconduct committed against her by the defendant over a period of years. She also testified that, although the defendant had attempted to effect penile penetration, he had not been successful. She was never asked on cross-

[5] See footnote 3.

examination any questions relating to any sexual experience that she may have had other than with the defendant, nor did the defendant attempt to make any offer of proof during the cross-examination as to any other conduct on the part of the victim.

The state called Guy and Dinnean as witnesses in its case-in-chief. At the completion of the testimony of each of these witnesses, the state turned over to the defendant the statements given to the police by each witness. The statements contained evidence that the victim had disclosed concern that she may have been pregnant and had engaged in sexual intercourse with her boyfriend. The state also called Leventhal who testified to the victim's physical manifestations of sexual abuse. Leventhal testified that the victim's physical appearance upon examination was consistent with the victim's statements that the defendant had attempted penetration and had failed.

After the completion of the state's case-in-chief, the defendant requested permission to cross-examine Guy and Dinnean as to the statement by the victim that she expressed concern about being pregnant. The defendant asserted that this evidence was admissible under the exception to the rape shield statute as evidence against Leventhal's opinion that the physical findings of the victim were consistent with no penetration and as an inconsistent statement by the victim. On appeal, the defendant claims that the evidence was admissible, under General Statutes § 54-86f (2) and (4), as evidence to counter Leventhal's opinion and to show that the victim had an independent basis to describe sexual acts. The defendant also asserts that the trial court improperly ruled on the admissibility of the evidence because it failed to hold a hearing on the matter.

"Statutes such as General Statutes § 54-86f, commonly known as rape shield statutes, have been enacted

specifically to bar or limit the use of prior sexual conduct of an alleged victim of a sexual assault because it is such highly prejudicial material." *State* v. *Cassidy,* 3 Conn. App. 374, 379, 489 A.2d 386, cert. denied, 196 Conn. 803, 492 A.2d 1239 (1985). The statute "excludes evidence of prior sexual conduct of the victim of a sexual assault, unless one of the statutory exceptions is satisfied." *State* v. *Christiano,* 228 Conn. 456, 469, 637 A.2d 382 (1994). "Our legislature has determined that, except in specific instances, and taking the defendant's constitutional rights into account, evidence of prior sexual conduct is to be excluded for policy purposes. Some of these policies include protecting the victim's sexual privacy and shielding her from undue harassment, encouraging reports of sexual assault, and enabling the victim to testify in court with less fear of embarrassment . . . . Other policies promoted by the law include avoiding prejudice to the victim, jury confusion and waste of time on collateral matters. . . . *State* v. *Cassidy,* [supra, 379]." (Citations omitted; internal quotation marks omitted.) *State* v. *Christiano,* supra, 469–70.

"The determination of whether the state's interests in excluding evidence must yield to those interests of the defendant is determined by the facts and circumstances of the particular case." Id., 470. In the case of sexual assault, § 54-86f provides the factors to be considered in determining the admissibility of evidence of sexual conduct by the victim. See id., 469–70.

### A

The defendant's claim that the evidence relating to the victim's fear of pregnancy was admissible under § 54-86f (2) is unpersuasive. Section 54-86f (2) allows the admission of such evidence when the defendant offers it "on the issue of credibility of the victim, provided the victim has testified on direct examination as

to his or her sexual conduct . . . ." The defendant cannot meet either requirement. The evidence was offered on the issue of Leventhal's credibility, not the victim's, and the victim was never asked about and did not testify as to her sexual conduct other than the assaults by the defendant.

Further, the evidence was not admissible under General Statutes § 54-86f (4). "Such evidence is admissible under this statute only if it fulfills the requirements of the statute that its probative value outweighs its prejudicial effect, within the context of the facts and circumstances of the case in which it arises." (Internal quotation marks omitted.) *State* v. *Kindrick,* 30 Conn. App. 56, 59–60, 619 A.2d 1 (1993). "Evidence should be excluded as unduly prejudicial: (1) where it may unnecessarily arouse the jury's emotions, hostility or sympathy; (2) where it may create distracting side issues; (3) where the evidence and counterproof will consume an inordinate amount of time; and (4) where one party is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) *State* v. *Santiago,* 224 Conn. 325, 340, 618 A.2d 32 (1992); *State* v. *Rinaldi,* 220 Conn. 345, 356, 599 A.2d 1 (1991); *State* v. *Clinkscales,* 21 Conn. App. 411, 416, 574 A.2d 243, cert. denied, 215 Conn. 815, 576 A.2d 545 (1990); *State* v. *Butler,* 11 Conn. App. 673, 683, 529 A.2d 219, cert. denied, 205 Conn. 806, 531 A.2d 938 (1987). The evidence here would create distracting side issues of (1) whether Leventhal could determine that no penetration had occurred even though the victim may have had sexual relations and (2) whether the victim had actually had sexual relations with another male. These issues, once brought into the trial, would exhaust an inordinate amount of the jury's time in collateral issues. Thus, the evidence was properly excluded.

B

The defendant's claim that the evidence was admissible to show that the victim had a separate, independent font of knowledge from which to describe sexual acts was not properly preserved. At trial, the defendant asserted that the evidence was admissible because it was relevant to show a prior inconsistent statement about the occurrence of penetration. Thus, the claim at trial was not consistent with the claim now asserted. "Appellate review of evidentiary rulings is ordinarily limited to the specific legal issue raised by the objection of trial counsel. See *State* v. *Rothenberg,* 195 Conn. 253, 263, 487 A.2d 545 (1985). The purpose of requiring trial counsel to object properly is not merely formal: it serves to alert the trial court to purported error while there is time to correct it without ordering a retrial. Id. By failing to object on [this ground], the defendant has failed to preserve this claim. *State* v. *Couture,* 194 Conn. 530, 553–54, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); see also Practice Book §§ 288 and 4185." *State* v. *Christiano,* supra, 228 Conn. 464; *State* v. *Dukes,* 29 Conn. App. 409, 416–17, 616 A.2d 800 (1992), cert. denied, 224 Conn. 928, 619 A.2d 851 (1993). "We have not yet reached a jurisprudential stage where we require trial judges to be mentally telepathic. Thus, we have consistently declined to review claims based on a ground different from that raised in the trial court." *State* v. *Ulen,* 31 Conn. App. 20, 29, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993). Therefore, we will not review this unpreserved claim.

C

The defendant's claim that the trial court improperly excluded the evidence without a hearing was also not properly preserved. The defendant did not request a

hearing before the trial court. "This court will not review issues of law that are raised for the first time on appeal." *State* v. *Harvey,* 27 Conn. App. 171, 186, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992). We will not afford review of this unpreserved claim.

## II

The defendant next claims that the trial court improperly denied him a continuance to prepare his defense after the state filed a substitute information against him substantially changing the allegations against him. We are unpersuaded.

Certain additional facts are necessary for a proper resolution of this issue. The state filed a long form information on October 30, 1989. The information stated that the defendant was accused of one count of sexual assault in the fourth degree and one count of risk of injury to or impairing the morals of a child for events that occurred in "early April 1989." The information also stated that the defendant was accused of one count of sexual assault in the fourth degree and one count of risk of injury to or impairing the morals of a child for events that occurred "on or about April 26, 1989." On November 15, 1990, the defendant filed a notice of intention to offer a defense of alibi that stated he "was in the Town of Ansonia with Keith Hawkins of 420 Dixwell Avenue, New Haven, CT at about 7:00." See Practice Book § 763.[6] The defendant also filed a notice that

[6] Practice Book § 763 provides: "Upon written demand filed by the prosecuting authority stating the time, date, and place at which the alleged offense was committed, the defendant shall file within ten days, or at such other time as the judicial authority may direct, a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi."

he would rely on a 1989 desk calendar, on which appointments were noted.

On December 13, 1990, the state filed an amended information.[7] The amended information alleged that one count of sexual assault in the fourth degree and one count of risk of injury to a child occurred "between August 7, 1984 and November 1986." The amended information also set forth that the other count of sexual assault in the fourth degree and the other count of risk of injury to a child occurred "between November 1986 and April 7, 1989." On January 3, 1991, the first day of jury selection, the defendant requested a continuance based on the filing of the amended information. The trial court denied the continuance and jury selection commenced. On January 9, 1991, the defendant again requested a continuance on the same ground, which the trial court denied. The presentation of evidence began on January 11, 1991. On appeal, the defendant claims that the denial of a continuance denied him due process by failing to give him adequate notice of the contents of the amended information before trial.

"The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. *Ungar* v. *Sarafite,* 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921, reh. denied, 377 U.S. 925, 84 S. Ct. 1218, 12 L. Ed. 2d 217 (1964); *State* v. *Williams,* 200 Conn. 310, 320, 511 A.2d 1000 (1986); *State* v. *Marra,* 195 Conn. 421, 437–38, 489 A.2d 350 (1985). *State* v. *Aillon,* 202 Conn. 385, 394, 521 A.2d 555 (1987). It must be shown that the trial [court] acted arbitrarily and substantially impaired [the] defendant's ability to defend himself, before an appellate court will conclude that the trial [court] abused [its] discretion.

[7] The defendant claims that he did not receive notice of the amended information prior to January 3, 1991.

The test is a stringent one. *United States* v. *Ellenbogen,* 365 F.2d 982, 985 (2d Cir. 1966), cert. denied, 386 U.S. 923, 87 S. Ct. 892, 17 L. Ed. 2d 795 (1967). *State* v. *Beckenbach,* 198 Conn. 43, 47, 501 A.2d 752 (1985). The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. *Ungar* v. *Sarafite,* supra, 589. [*State* v. *Beckenbach,* supra,] 47–48. The right of a defendant to have a continuance is not . . . absolute; *State* v. *Bethea,* 167 Conn. 80, 83, 355 A.2d 6 (1974); and [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. *Ridgeway* v. *Ridgeway,* 180 Conn. 533, 538, 429 A.2d 801 (1980)." (Internal quotation marks omitted.) *State* v. *Walker,* 215 Conn. 1, 9–10, 574 A.2d 188 (1990); see *State* v. *Krijger,* 33 Conn. App. 49, 55, 633 A.2d 310 (1993), cert. denied, 228 Conn. 917, 636 A.2d 849 (1994).

" '[F]or purposes of Practice Book §§ 623 and 624, a criminal trial begins with the voir dire of the prospective jurors.' *State* v. *Cole,* 8 Conn. App. 545, 551–52, 513 A.2d 752 (1986). Before the commencement of a criminal trial, § 623 controls the alteration of charges brought against a criminal defendant. This section provides that '[i]f the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. Upon motion of the defendant, the judicial authority, *in [its] discretion,* may strike the amendment or added counts or substitute information, if the trial or the cause would be unduly delayed or the substantive rights of the defendant would be prejudiced.' (Emphasis added.) Practice Book § 623." *State* v. *Nixon,* 32 Conn. App. 224, 229, 630 A.2d 74, cert. granted on other grounds, 228 Conn. 910, 635 A.2d 1229 (1993); *State* v. *Huff,* 10 Conn. App. 330, 344–47, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987). "The critical ques-

tion therefore is whether the substitute information prejudiced the defendant's rights to the extent that the trial court abused its discretion when it chose not . . . to grant the defendant a continuance." *State* v. *Nixon,* supra, 230.

Here, the defendant received the amended information prior to voir dire, thereby giving him an opportunity to question the potential jurors on the basis of the amended information. See *State* v. *DesLaurier,* 32 Conn. App. 553, 559, 630 A.2d 119, cert. granted on other grounds, 227 Conn. 930, 632 A.2d 705 (1993); *State* v. *Nixon,* supra, 32 Conn. App. 231. Second, the defendant had notice of the added dates a full week prior to the commencement of the evidence, which convinces us that the defendant had ample opportunity to prepare for trial. *State* v. *Nixon,* supra, 230–31; *State* v. *Huff,* supra, 10 Conn. App. 344–47. The trial court acted within its discretion, and we will not substitute our judgment for that of the trial court. See *State* v. *Nixon,* supra, 232.

## III

The defendant next claims that the trial court improperly permitted the state's witnesses to testify as to the ultimate issue of fact presented by the case. We are unpersuaded.

Certain additional facts are necessary for a proper resolution of this appeal. On January 10, 1991, the defendant filed a motion in limine requesting that the trial court bar any witness from testifying "as to the truthfulness of any witness or party to this matter or to the truthfulness of any class of persons, especially persons alleging sexual abuse, as determining the veracity of witnesses is wholly within the province of the jury." The defendant claimed in the trial court that the purpose of the motion was to prevent expert witnesses from testifying to the veracity of sexual abuse

victims. The trial court denied the motion as premature on the basis of its belief that such a question was evidentiary in nature and should be addressed only when a specific question was asked and objected to. At trial, Leventhal testified, without objection, that the victim had been sexually abused for several years by the defendant. On cross-examination, the defendant elicited from Leventhal that he had not corroborated the victim's account in any way. On further cross-examination, Leventhal testified in response to a question that he did not corroborate the victim's account because he believed that the victim was truthful.

Pelazza, the social worker, testified that she recommended that the victim continue counseling "because she was concerned about the extent of abuse that had occurred." The defendant objected and claimed that whether the abuse had occurred is a matter for the jury. The trial court overruled the objection because Pelazza was addressing her recommendation. Further, Guy testified that she decided to call DCYS because she believed the victim's story. The defendant objected on the ground that the testimony was an opinion of a nonexpert. Dinnean then testified, without objection, that she felt that the victim was abused.

The defendant failed to interpose an objection to the testimony of Leventhal and Dinnean. A full examination of the record fails to disclose any objection to the testimony or any motion to strike the testimony. The defendant does not seek review of these claims pursuant to *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), nor does he seek review under the plain error doctrine. Practice Book § 4185. Thus, we decline to afford review of these unpreserved claims. See *State* v. *Robinson,* 227 Conn. 711, 741, 631 A.2d 288 (1993).

The defendant failed to preserve his claim as to the testimony of Guy by objecting on a ground that was

different from the claim of error. "Review of evidentiary rulings is made on the specific legal ground asserted at the time of trial. *State* v. *Velez,* 17 Conn. App. 186, 192, 551 A.2d 421 (1988), cert. denied, 210 Conn. 810, 556 A.2d 610, cert. denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L. Ed. 2d 698 (1989). This court is not in any way bound to consider claims of law not properly raised at trial. *State* v. *Robinson,* [supra, 227 Conn. 741]; *State* v. *Brice,* 186 Conn. 449, 457, 442 A.2d 906 (1982)." *State* v. *Carter,* 34 Conn. App. 58, 73, 640 A.2d 610 (1994). Because the reason now asserted on appeal is different from that asserted before the trial court, we will not afford review of this unpreserved new claim.

The testimony by Leventhal on cross-examination is invited error. "Action induced by an appellant cannot ordinarily be a ground of error. *State* v. *Ross,* 189 Conn. 42, 47, 454 A.2d 266 (1983); *State* v. *Kish,* 186 Conn. 757, 769, 443 A.2d 1274 (1982); *State* v. *Cobbs,* 164 Conn. 402, 424, 324 A.2d 234, cert. denied, 414 U.S. 861, 94 S. Ct. 77, 38 L. Ed. 2d 112 (1973)." *State* v. *Scognamiglio,* 202 Conn. 18, 25, 519 A.2d 607 (1987); *State* v. *Hall,* 28 Conn. App. 771, 776, 612 A.2d 135, cert. denied, 224 Conn. 904, 615 A.2d 1045 (1992). The defendant can claim relief from an induced error only upon a showing that the error violated his constitutional rights. *State* v. *Scognamiglio,* supra, 25. When the claimed error is the result of a question posed by the defendant on cross-examination, " '[s]o long as the answer is clearly responsive to the question asked, the questioner may not later secure a reversal on the basis of any invited error.' " *State* v. *Smith,* 212 Conn. 593, 611, 563 A.2d 671 (1989); *State* v. *Brokaw,* 183 Conn. 29, 33, 438 A.2d 815 (1981); *State* v. *Polanco,* 26 Conn. App. 33, 37, 597 A.2d 830, cert. denied, 220 Conn. 926, 598 A.2d 367 (1991). Therefore, the defendant cannot claim error on the basis of the witnesses' response to his question.

The testimony by Pelazza was not testimony of the ultimate issue of fact. One of the ultimate issues of fact in this case was the truthfulness of the victim. *In re Noel M.*, 23 Conn. App. 410, 422, 580 A.2d 996 (1990). The witness' testimony did not address the truthfulness of the victim. She testified that she recommended continued counseling because of her concern about the extent of abuse that had occurred. This does not reflect her opinion about the victim's truthfulness, but reflects her reason for recommending counseling. It did not give any indication to the jury as to whether abuse had in fact occurred because the purpose of the counseling was to determine the extent of any abuse. Therefore, the witness did not testify to the ultimate issue of fact.

Even if this evidence can be characterized as relating to the ultimate issue of fact, the testimony was not improper. The trial court has discretion to allow nonexperts to give opinions as to the truthfulness of the victim as long as the witnesses are "those who have been shown to have had an opportunity to form, and who have formed, an opinion as to the character of the . . . [individual] with respect to the trait or traits in issue." (Internal quotation marks omitted.) *State* v. *Spigarolo*, 210 Conn. 359, 374, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 10 L. Ed. 2d 312 (1989). The evidence is then admissible as long as the jury needs assistance on the question. Id. Here, the trial court could reasonably have determined that the witness' opinion was necessary and that she had an opportunity to form an opinion through counseling sessions. Therefore, the trial court did not abuse its discretion in admitting the testimony.

## IV

The defendant next claims that the trial court improperly denied him access to certain DCYS records. The defendant posits that the trial court's refusal denied

him his rights under the confrontation clause of the United States constitution as stated in *Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and *Delaware* v. *Fensterer,* 474 U.S. 15, 22, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985).

Certain additional facts are necessary for a proper resolution of this issue. The defendant cross-examined Jetter and asked her whether she retained a record of her conversation with the victim. The witness stated that she kept a record and that she had the record at the trial. The defendant asked the witness to produce the record. The state objected and the trial court sustained the objection. The defendant never marked the record for identification. Therefore, we do not have the record before us.

" 'The purpose of marking an exhibit for identification is to preserve it as part of the record and to provide an appellate court with a basis for review.' *Kraus* v. *Newtown,* 211 Conn. 191, 194–95, 558 A.2d 240 (1989)." *Esaw* v. *Friedman,* 217 Conn. 553, 566, 586 A.2d 1164 (1991). Thus, the exhibits are not part of the record before us and we are unable to review the claim properly.

V

The defendant next claims that the trial court improperly failed to dismiss one count of the information that was barred by the statute of limitations. The defendant asserts that the acts underlying the allegations of the first count of sexual assault in the fourth degree had occurred more than one year prior to the issuance of the warrant of arrest, thereby violating General Statutes § 54-193.[8]

---

[8] General Statutes § 54-193 provides: "(a) There shall be no limitation of time within which a person may be prosecuted for a capital felony, a class A felony or a violation of section 53a-54d.

"(b) No person may be prosecuted for any offense, except a capital felony, a class A felony or a violation of section 53a-54d, for which the punishment

Certain additional facts are necessary for a proper resolution of this issue. On December 13, 1990, the state filed an amended information.[9] The amended information stated that the first count of sexual assault in the fourth degree occurred "between August 7, 1984 and November 1986." On January 10, 1991, the defendant filed a motion to dismiss this claim based on a violation of the statute of limitations. The court deferred ruling on the motion until after the state completed its case. The state rested its case on January 17, 1991. On January 18, 1991, the trial court again deferred its decision until all of the evidence was presented. The presentation of evidence was complete on January 29, 1991. At that time, the trial court deferred ruling on the motion until after the verdict. The defendant did not request a jury charge on the statute of limitations and did not object to the jury charge. After the verdict, the trial court failed to rule on the motion.

The statute of limitations is not a jurisdictional bar to prosecution. *State* v. *Parsons*, 28 Conn. App. 91, 96, 612 A.2d 73, cert. denied, 223 Conn. 920, 614 A.2d 829 (1992). "The statute of limitations is . . . an affirmative defense. *State* v. *Coleman*, [202 Conn 86, 90, 519 A.2d 1201 (1987)]; *State* v. *Littlejohn*, 199 Conn. 631, 640, 508 A.2d 1376 (1986). Consequently, the burden

is or may be imprisonment in excess of one year, except within five years next after the offense has been committed. No person may be prosecuted for any other offense, except a capital felony, a class A felony or a violation of section 53a-54d, except within one year next after the offense has been committed.

"(c) If the person against whom an indictment, information or complaint for any of said offenses is brought has fled from and resided out of this state during the period so limited, it may be brought against him at any time within such period, during which he resides in this state, after the commission of the offense.

"(d) When any suit, indictment, information or complaint for any crime may be brought within any other time than is limited by this section, it shall be brought within such time."

[9] See footnote 7.

was on the defendant to prove the elements of that defense by a preponderance of the evidence. *State* v. *Coleman,* supra [90]; *State* v. *Littlejohn,* supra [640]; see General Statutes § 53a-12 (b); *United States* v. *Karlin,* 785 F.2d 90, 92 (3d Cir. 1986)." *State* v. *Crawford,* 202 Conn. 443, 451, 521 A.2d 1034 (1987). "An affirmative defense is presented in the orderly course of a criminal trial after the prosecution has presented its case-in-chief." *State* v. *Coleman,* supra, 91; *State* v. *Parsons,* supra, 96. Although the defendant raised the defense during the trial, he failed to submit a request to charge thereon. Thus, he failed to preserve the defense. See *State* v. *Parsons,* supra, 96–97. Further, the trial court never ruled on the motion. Therefore, we do not have an adequate record to review this claim. See *State* v. *Reddick,* 33 Conn. App. 311, 338, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994).

The judgment is affirmed.

In this opinion the other judges concurred.