[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
CT Page 276
By her second amended petition, petitioner seeks a writ of habeas corpus in three separate counts. The first count alleges ineffective assistance of counsel. The second count alleges that petitioner is factually innocent of the charges for which she has been convicted. The third count is a claim of deprivation of due process constituting an unfair sentence.
For reasons hereinafter stated the petition is granted and it is ordered that petitioner be released from custody six months from the date of this order unless she is granted a new sentencing hearing in accordance with P.B. § 43-10 before a different judge, and resentenced before that date.
 I 
The first count is based on a claim of ineffective assistance of counsel. The basic facts underlying this claim are not greatly in dispute and may be summarized as follows.
On March 1, 1994, petitioner and her then co-defendant, Nissa Aponte, took physical custody of Aponte's four year old daughter who was then in good health. During the following thirty days, the child was assaulted with either a belt or a stick Injuring her left eye, back, stomach, chest and leg. The child also suffered internal injuries caused by blunt trauma to the stomach which injured her pancreas. State v. Cosado,42 Conn. App. 371, 373 (1996).
Aponte was arrested on March 31, 1994 and charged with two counts of assault in the first degree in violation of C.G.S. § 53a-59(a)(1) and two counts of risk of injury in violation of C.G.S. § 53-21 in connection with the injuries to her daughter. On July 17, 1994, petitioner was arrested on the same charges. Attorney Timothy Aspinwall was appointed to represent petitioner and it is alleged in the petition that Attorney Aspinwall's representation of petitioner was inefficient in violation of her rights under the sixth and fourteenth amendments of the U.S. Constitution and Article First § 8 of the Connecticut Constitution.
Petitioner and Aponte's cases were consolidated for trial on the docket of the Superior Court G.A. 2 at Bridgeport. After a jury was selected, however, the state moved for, and the trial court granted, a motion to sever the cases. The state elected to proceed against Aponte first. The trial resulted in Aponte's conviction of all counts. State v. Aponte, CT Page 277249 Conn. 735, 737 (1999).
Petitioner's case was assigned for trial but just before the commencement of jury selection, on January 18, 1995, petitioner withdrew her pleas of not guilty and entered a plea of nolo contendere to one charge of assault in the first degree and one count of risk of injury.
The trial court, (Rodriguez, J.) accepted petitioner's plea after conducting a canvass pursuant to Practice Book §§ 711 through 713 (now §§ 39-18 through 39-21) and determining that the plea was entered knowingly, voluntarily and intelligently. State v. Cosado, supra,42 Conn. App. 373.
A sentencing hearing was held before Judge Rodriguez on March 30, 1995 and on the charge of assault in the first degree petitioner was committed to the custody of respondent for a period of fifteen years, on the charge of risk of injury, petitioner received a sentence of ten years. The sentences were to run consecutively for a total effective sentence of twenty-five years.
Claiming that her conviction and sentences were the result of ineffective assistance by her attorney in violation of her constitutional rights, petitioner requests, in the first count of her petition, that the plea and sentences be vacated and the case remanded to the trial court for further proceedings together with what other further relief as law and justice may require.
As a defendant in a criminal prosecution, petitioner was "constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings . . . .This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. Pretrial negotiations implicating the decision of whether to plead guilty is a critical stage in criminal proceedings; . . ." Copasv. Commissioner of Correction, 234 Conn. 139, 153 (1995). (Citations omitted.)
The general standard to be applied in habeas corpus proceedings to determine whether an attorney effectively represented a criminal defendant is set forth in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed. 674 (1984). "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice . . . thus, he must establish not only that his counsel's performance was deficient, but as a result thereof, he suffered actual prejudice, namely, that there is a reasonable probability, but for counsel's CT Page 278 unprofessional errors, the result of the proceeding would have been different. . . .In this context, a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome of the case. . . .Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome. . . . Bunkley v.Commissioner of Correction, 222 Conn. 444, 445-46, 610 A.2d 592 (1992)."Mercer v. Commissioner of Correction, 51 Conn. App. 638, 640-641 (1999).
"In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial." Id.
Where as here petitioner entered a guilty plea, the standard enunciated in Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203
(1985), and quoted in Copas, supra, 234 Conn. 156-57, applies.
In this situation, "the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence for the defense that was not identified because of ineffective assistance of counsel would have been successful at trial . . . [The United States Supreme Court stated that in] many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate . . . the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (Citation omitted; emphasis added; internal quotation marks omitted.)Henry v. Commissioner of Correction, 60 Conn. App. 313, 318 (2000).
Petitioner alleges that Attorney Aspinwall failed to investigate her case, obtain documents essential to the defense and prepare for trial. It was also alleged that petitioner wished to persist in her plea of not guilty and that she changed her plea only because of her attorney's CT Page 279 advice concerning the likelihood of conviction if her case went to trial. It is petitioner's claim that the attorney's advice was tainted due to his failure to adequately investigate and prepare for trial. Plaintiff also claims that her attorney did not share the police report or other statements with her and did not keep her informed concerning the evidence in the case.
Attorney Aspinwall testified about his preparation of petitioner's case. He stated that he reviewed the records concerning the child including the hospital reports. The state was then using an open file system and he took advantage of this to review the entire state's file. He obtained a copy of the warrant and the police report. The attorney also reviewed the conflicting statements of the co-defendant and had information concerning her prior criminal record. He talked to petitioner's family members and interviewed the co-defendant in the presence of her attorney.
In his preparation of petitioner's case, Attorney Aspinwall had a unique opportunity seldom available to defense counsel in that he was able to sit in on the Aponte trial. The transcript of that trial indicates that at one time the state's attorney complained to the court about Attorney Aspinwall's sitting in the courtroom taking notes. The evidence in that trial would involve most of the same witnesses who would appear in petitioner's trial. He had an opportunity to assess their credibility and to listen to their testimony concerning petitioner's culpability for the injuries to the child.
It was the attorney's testimony that he reviewed these matters with petitioner.
From the better evidence, it must be concluded that Attorney Aspinwall's investigation and preparation for trial was adequate and did not fall below the required standards of competence. It is more probable than not that he reviewed the contents of the police report and other documents with petitioner but if he did not this had no material effect on the outcome of the case.
In his preparation for trial, Attorney Aspinwall reviewed the conflicting statements of the co-defendant, Nissa Aponte, and the child. The attorney described Aponte's statements by testifying that she "flip flopped". It could be inferred that at the time of Aponte's arrest the police suspected petitioner of being involved in the assaults on the child. Aponte talked to Detective Whittaker while in court in April. In a statement addressed to the detective dated May 25, 1994, Aponte stated that she was innocent of the crime charged and tried to protect her daughter. Aponte asserted in the statement that petitioner was "the real CT Page 280 party involved" and that she should be arrested. On June 15, 1994, Aponte again addressed another memo to Detective Whittaker. Evidently she had talked to Whittaker who asked her to describe in more detail what happened. In this letter, Aponte states that she was "going out constantly, mostly every day to be able to support my habit and also Carmen's." For this reason she stated that Carmen, the petitioner, was the babysitter who remained home with the child. The document then described petitioner beating her daughter and causing the child to kneel until her knees had blisters and would bleed. Aponte also indicated that if her testimony was needed the detective should let her know.
Aponte authored another statement, undated, but under the heading "strictly confidential" with the subheading "please keep in mind that the incident mentioned on this letter was all under the influence of drugs." The letter then described an incident which was alleged to have occurred on March 30, 1994, in which petitioner's mother, Carmen Lopez, was driving her automobile with Aponte and her daughter as passengers. When a truck pulled out in front of the car, Mrs. Lopez was forced to quickly apply her brakes causing the child to fall out of her seat and strike her eye. At trial, petitioner's mother's testimony was basically the same as Aponte's version in this letter.
This statement was evidently intended to explain the injury to the child's face and was exculpatory to Aponte and petitioner.
These three statements were written while Aponte was incarcerated at the Connecticut Correctional Institution in Niantic. All were actually written by inmate, Carmen Santiago, and signed by Aponte.[1] On June 21, 1994, Aponte wrote another statement this time addressed to Judge Flannagan. The letter was given to her lawyer. In this letter, which was actually written by Aponte and notarized, she accepted full responsibility for her daughter's injuries except for the eye, which she ascribed to the accident of March 30, 1994. The letter exonerated petitioner. Aponte also attempted to exonerate petitioner at her own sentencing.
Petitioner called as an expert witness Attorney Leon Katz. This witness criticized Attorney Aspinwall's handling of petitioner's case and opined that it fell below the Strickland standard. He testified that the case against petitioner was based almost wholly on the statements of the child and Nissa Aponte. The attorney stated that with Aponte's contradictory statements, her credibility could be effectively impugned at trial.
Attorney Aspinwall was aware of Aponte's "flip flop" contradictory statements. He had interviewed her and had requested a copy of her criminal record. It is unclear as to whether the state would call Aponte CT Page 281 to testify in the case against petitioner. Aponte was convicted without any eyewitness testimony to the assaults except the child's. Petitioner wanted her attorney to call upon Aponte as her witness at trial claiming that Aponte would support her claim that she was innocent of the charges. One of the reasons given for severing the trial was that Aspinwall might call Aponte as a defense witness. Aspinwall had also been informed by Aponte's lawyer that she would not testify. It is not at all certain that the state would rely on evidence or testimony from Aponte in the prosecution of its case against petitioner. It is certain, however, that if Aponte did testify either for the state or the petitioner, her veracity could be put in question and Attorney Aspinwall was well aware of this fact.
Attorney Katz also stated that the testimony of the child would be essential to the state's case against petitioner and that the credibility of the child's testimony could be effectively attacked. Unlike Aponte, the testimony of the child would be essential to the state's case and it is clear that the state intended to call the child as a witness in its prosecution of petitioner.
Attorney Katz's review of the documents submitted to him lead him to conclude that in the child's initial statement she made no mention of petitioner as one of the parties who had assaulted her. Attorney Katz felt that the child did not implicate petitioner until about a month after her original statement. During this time the child was with parties who could have influenced her testimony and it could be argued that the petitioner was brought into the case by the people who were caring for the child and had an interest in distorting the child's testimony. Attorney Katz testified that this factor would allow defense counsel to effectively attack the child's testimony implicating petitioner.
A review of the testimony given at Aponte's trial, however, brings this delay of accusing petitioner into question. Iris Ramos, Aponte's mother, testifying at the trial stated that when she observed the injuries and called the police she asked the child who caused the injuries. Her testimony was that the child told her it was Nissa and Mima. Mima was subsequently identified as petitioner. On the same date when Detective Whittaker responded to the call for police assistance, he was confronted with a child who was greatly agitated and speaking Spanish. He recalled that the child was mentioning Nissa, Mima and Lapata.[2] On the same date, the child was interviewed at the hospital by a Spanish speaking social worker. In response to the social worker's question as to who caused her injury, the child responded "Nissa Lapata did it." The reports made at the time may have only implicated Nissa, the child's mother, but there is enough in the record to indicate any claim that the child did not implicate petitioner in her initial statement might be hard to CT Page 282 sustain.
Attorney Aspinwall was aware of the importance of the child's testimony and he filed a motion in limine to determine the competency of the child to testify. The motion was decided by the court on December 20, 1994 in accordance with the provisions of C.G.S. § 54-86g with the issue being left open to be reconsidered during the trial. The child did testify against Aponte resulting in Aponte's conviction. The child's testimony was replete with reference to assaults perpetrated by petitioner.
Attorney Aspinwall sat through the Aponte trial and formed the opinion that the child, who was subject to extensive cross examination, performed well and was an effective witness in the Aponte trial.
Petitioner claims that the testimony of her mother, Carmen Lopez, would be helpful to her case and requested that her attorney call her mother when the case came to trial. Mrs. Lopez would have testified that on March 30, 1994, she agreed to drive Nissa Aponte to an appointment. While so doing, with the child in a car seat, and Aponte and others as passengers, a truck pulled out in front of her causing Mrs. Lopez to abruptly apply the brakes. This sudden stop resulted in the child being thrown from the car seat and striking her eye against the car. This injury to the child was described by both Lopez and Aponte as slight resulting in a tiny redness and bruise to her face. Evidently this testimony was designed to explain the injuries to the child. One of Aponte's written statements gave the same version of the accident.[3]
The claim that the accident caused the child's injuries or the injuries to her eye, was greatly at variance with the medical testimony at Aponte's trial and the photographs in evidence. Mrs. Lopez testified concerning the accident at the Aponte trial and it does not appear that the jury gave much credence to this theory as to the cause of the child's injuries.
At the Aponte trial, when asked by the state's attorney who hit her in the eye, the child identified petitioner as the person who struck her.
On January 18, 1995, just prior to commencing jury selection, Attorney Aspinwall recommended that petitioner accept the state's offer to reduce the charges in return for a plea of nolo contendere. He urged his client to accept this offer. It cannot be found that he was deficient in so doing. He had observed the Aponte trial and knew that Aponte had been convicted. He also knew that the same basic evidence used at the Aponte trial would be used against his client. The main witness against petitioner would be the child who it could be found had consistently CT Page 283 implicated petitioner from the start and throughout the Aponte trial. The attorney had formed a favorable opinion of the child as a witness. He had reason to be concerned about the two witnesses which petitioner urged him to call on her behalf. Aponte lacked credibility and Carmen Lopez's testimony was not effective at the Aponte trial. Petitioner had a criminal record and it was feared that it might come before the jury at her trial. This would be particularly true if petitioner elected to testify on her behalf.
Under such circumstances, it is not unreasonable for Attorney Aspinwall to have concluded that there was a strong likelihood of conviction if petitioner went to trial and that it would be in her best interest to accept the state's offer. In so doing, it cannot be found that he was unreasonable or in any way deficient in his representation of petitioner.
It is alleged that petitioner wanted to go to trial, as she had a right to do, but that Attorney Aspinwall put undo pressure on her to enter a plea of nolo contendere. Petitioner testified that prior to changing her plea she conferred with her lawyer with the state's attorney present and that the offer was "a couple of years" or two or three years." he father testified in support of petitioner's version of the conference. The better evidence, however, does not allow a finding that the state's attorney participated in this conference or that a sentence of two or three years was promised. The transcript of of the court proceedings on January 18, 1995, clearly indicates that petitioner understood that the plea agreement would allow a sentence from 0 to 30 years. In his canvass, Judge Rodriguez made certain that petitioner knew what her exposure was. In reply to a question from the judge, petitioner replied, referring to her lawyer, "he told me about the maximum, Your Honor, of thirty years, . . ." The judge was meticulous in making certain that petitioner knew that she had a right to a trial and that her plea was voluntary. Statev. Cosado, supra, 42 Conn. App. 375, 379.
At her sentencing hearing, petitioner attempted to withdraw her prior pleas of nolo contendere on the grounds that she had been pressured by her attorney into entering the pleas. Attorney Aspinwall informed the court that petitioner no longer wanted him to represent her and suggested that another attorney be appointed and an evidentiary hearing be conducted on the motion to withdraw the plea. The court denied the request and proceeded with the hearing but, at petitioner's election, Attorney Aspinwall did not participate in the sentencing hearing. Attorney Katz, in his testimony, opined that Attorney Aspinwall was deficient in not offering to disclose to the judge in camera how he put pressure on his client to change her plea. This assertion, however, is too speculative for the court to consider. It is improbable that the judge would listen CT Page 284 to Attorney Aspinwall off the record. The judge relied upon the statements of petitioner to determine that the plea was voluntary and there is little likelihood that any such offer on the part of the attorney would have made any difference in the decision to not allow petitioner to withdraw her plea.
From the evidence it must be concluded that in advising petitioner to plead to the reduced charge Attorney Aspinwall's performance was not in any way deficient or that petitioner suffered any actual prejudice as a result of his recommendations and her acceptance of the plea.
In the petition it was alleged that Attorney Aspinwall was deficient in not retaining the services of a "child expert" to assist him in the handling of petitioner's case. At the habeas trial, petitioner called Dr. George Lynn, a psychologist with considerable experience in the handling of psychological matters involving children. The substance of Dr. Lynn's testimony was that a person learned in this area, "might possibly" have been of assistance to Attorney Aspinwall in handling this case. It is too speculative to conclude how this assistance would have been helpful to the attorney in this case and it cannot be concluded that Attorney Aspinwall was deficient in failing to retain the services of an expert in this field to assist him in the preparation of petitioner's case.
 II 
In the second count of the petitioner it is alleged that petitioner is factually innocent of the charges for which she has been convicted and she has maintained her innocence through out the proceedings. In attempting to prove actual innocence in a habeas corpus proceeding, petitioner has assumed a high burden of proof. Miller v. Commissioner ofCorrection, 242 Conn. 745 (1997). A review of the evidence submitted, including the statements of Nissa Aponte exculpating petitioner and the testimony of petitioner's mother, and after a review of the testimony given at Aponte's trial and the other documents submitted in evidence, it must be concluded that petitioner has failed to sustain the burden of proof that she is factually innocent of the crimes for which she was convicted.
 III 
The third count of the petition alleges that the state has refused to consent to a reduction of sentence hearing under the provisions of C.G.S. § 53a-39(b). It is claimed that under the circumstances of this case, where Aponte's sentence was reduced after limited success in her appeal, the state's refusal to consent to the hearing constitutes a CT Page 285 depravation of due process and an inequitable imposition of sentence. Petitioner presents no authority in support of this position and it must be concluded that allegations of the third count even if proven would not constitute grounds for the relief sought.
 IV 
Although it is not specifically set forth in the pleadings, Attorney Katz raised an issue concerning the sentencing which must be addressed.
At the start of the proceedings in court on January 18, 1995, when petitioner entered her pleas of nolo contendere the attorneys placed on the record their understanding of the plea agreement. The state's attorney informed the court as to which charges petitioner would enter pleas to. The attorney then went on to say there is no agreement as to the number of years she will serve, whether it will be 0 or up to 30. That is strictly within your province, and it will be an open ended plea." Attorney Aspinwall also addressed the court as to his understanding of the agreement. He stated that is was a no recommendation situation. "The state has agreed not to stand up and recommend any particular sentence in this case, no particular amount of years in this case." The state's attorney did not object to or attempt to contradict Attorney Aspinwall's understanding as to what the plea agreement was. The record then indicates that Attorney Aspinwall informed the court that he had discussed the plea agreement with his client and her family and that she had agreed to accept the plea. It must be concluded that petitioner was relying on Attorney Aspinwall's understanding of the plea agreement when she entered her plea.
At the time this matter came before the court for sentencing Aponte had already been sentenced to 28 years. As has already been noted, during the sentencing hearing, Attorney Aspinwall had been instructed by his client to remain silent and not participate.
In his sentencing remarks to the judge, the state's attorney described the crime, petitioner's participation in the assaults on the child, his impression of petitioner, and her past criminal activities. The attorney then said "Your Honor, she has no redeeming quality. Give her the same time as the co-defendant." In his concluding remarks, the state's attorney said "she deserves the maximum time, she deserves 30 years."
It must be concluded that in making specific recommendations for a sentence the state's attorney breached the terms of the plea agreement not to recommend a specific term of years in sentencing. When a defendant's guilty plea (here a plea of nolo contendere) is induced by promises arising out of a plea bargaining agreement, fairness requires CT Page 286 that such promises be fulfilled by the state. State v. Littlejohn,199 Conn. 631, 644 (1986).
It is also logical to conclude that petitioner suffered prejudice from the breach of agreement since the sentence is comparable to that imposed on the co-defendant after trial.
In the exercise of its power under C.G.S. § 52-470 to grant such relief "as law and justice require" the trial court, much like a court of equity, has considerable discretion to frame a remedy, so long as the remedy is commensurate with the scope of the Constitutional violation which has been established. Gaines v. Manson, 194 Conn. 510, 528 (1984).
Under the circumstances it must be concluded further that the petition for a writ of habeas corpus must be granted to the extent that petitioner is entitled to resentencing before a different judge in accordance with the terms of the plea agreement. Green v. Warden, 17 Conn. App. 50, 53
(1988).
Accordingly, the petition for a writ of habeas corpus is granted and it is ordered that petitioner be released from custody six months from the date of this order unless she is granted a new sentencing hearing in accordance with P.B. § 43-10, before a different judge and resentenced before that date.
Joseph J. Purtill, Judge Trial Referee