# STATE OF CONNECTICUT *v.* PAUL ALOI
## (AC 24641)

Schaller, Bishop and Mihalakos, Js.

Argued September 14—officially released December 14, 2004

*Glenn T. Terk*, for the appellant (defendant).

*Annemarie L. Braun*, special deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Louis J. Luba*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. This appeal requires us to consider whether proof of a refusal to provide one's identification to an officer on request coupled with nonthreatening speech provides a sufficient basis for conviction under General Statutes § 53a-167a, interfering with an

officer. The defendant, Paul Aloi, appeals from the judgments of conviction, rendered after a trial to the court, of criminal trespass in the second degree as a lesser offense included within burglary in the third degree in violation of General Statutes § 53a-108, interfering with an officer in violation of § 53a-167a and criminal mischief in the third degree in violation of General Statutes § 53a-117. On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction of interfering with an officer and criminal mischief in the third degree, (2) by convicting him of criminal trespass in the second degree as a lesser offense included within burglary in the third degree, the trial court violated his due process right to fair notice and his right to offer the affirmative defense of the statute of limitations, and (3) the charges of criminal mischief in the third degree and interfering with an officer were barred by the statute of limitations. We affirm in part and reverse in part the judgments of the trial court.

The court reasonably could have found the following facts. Since 1985, the defendant has resided adjacent to Mill Woods Park, a public park in Wethersfield. Winding Brook Turf Farm (Winding Brook) is located on the opposite side of Mill Woods Park from the defendant's residence. Winding Brook has pumped water from a stream in Mill Woods Park for several years to irrigate its crops. The noise associated with the pumping activities has been a cause for contention between the defendant and Winding Brook for some time. In 2002, Winding Brook began using a fire truck, which was stationed in close proximity to the defendant's home, to pump water from Goff Brook at Mill Woods Park. During the summer of 2002, some Winding Brook employees discovered that the fire truck had been vandalized and contacted the Wethersfield police department. In

response, the police installed a video surveillance camera to monitor the fire truck.

On August 2, 2002, the defendant approached Winding Brook's fire truck and stood on its side platform. He subsequently opened the door to the cab of the fire truck, leaned inside and placed his hands on the dashboard as well as on the front seat. The exterior emergency lights on the fire truck flickered on and off while the passenger door was still open. The emergency lights remained on for approximately fifty minutes. Consequently, William D. Morgan, the owner of Winding Brook, filed a complaint against the defendant for trespassing. In response, a Wethersfield police officer told the defendant to stay off of the Winding Brook property and to stay away from the pumping equipment.

On August 14, 2002, after the fire truck unexpectedly ceased operating, Richard Peruta, an employee of Winding Brook, approached the fire truck to inspect the equipment. He noticed that the defendant was standing nearby. The defendant stated to Peruta: "Why don't you call the police, and I'll have you arrested for false arrest." Peruta, consequently, contacted the Wethersfield police and complained that the defendant was trespassing. The police arrived at Mill Woods Park in response to Peruta's complaint and found the defendant standing on public property near the fire truck. Police Officer Jay Salvatore approached and advised the defendant that Peruta had complained that the defendant was trespassing and possibly had damaged the fire truck. Salvatore requested that the defendant produce identification. The defendant did not immediately hand over his identification. The defendant also stated that he did not need to produce identification, that he was on public property and that "this isn't Russia. I'm not showing you any . . . ."[1] Additional facts will be presented as necessary.

---

[1] Shortly thereafter, however, the defendant did provide Officer Salvatore with his identification and peaceably submitted to the arrest.

## I

We first turn to the defendant's claim that the evidence was insufficient to support his conviction of interfering with an officer and criminal mischief in the third degree. The standard of review employed in a sufficiency of the evidence claim is well settled. We apply a two part analysis. "First, we construe the evidence in the light most favorable to sustaining the verdict. . . . Second, we determine whether, from that evidence and all the reasonable inferences which it yields, a [trier of fact] could reasonably have concluded that the defendant was guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Gordon*, 84 Conn. App. 519, 534, 854 A.2d 74, cert. denied, 271 Conn. 941, 861 A.2d 516 (2004).

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Barretta*, 82 Conn. App. 684, 688, 846 A.2d 946, cert. denied, 270 Conn. 905, 853 A.2d 522 (2004).

## A

The defendant first claims that the evidence was insufficient to convict him of interfering with an officer. He argues that the state failed to prove acts of hindrance that are required to constitute the offense. We agree.[2]

---

[2] As an additional ground for reversal of the judgment, the defendant argues that the evidence was insufficient to prove that he had the requisite mental state of specifically intending to interfere with the performance of an officer's duty. Because we reverse the judgment on the basis noted, we need not reach that issue.

The defendant contends that the evidence was insufficient to constitute the crime of interfering with an officer under § 53a-167a because his comments and failure to produce identification immediately did not hinder Salvatore in the performance of his duties.[3]

We recognize that the defendant's claim raises an issue implicating the interpretation of § 53a-167a. We note, too, that neither this court nor our Supreme Court has yet determined whether mere declaratory statements and a refusal to show identification in response to an officer's request constitute interference with an officer in violation of § 53a-167a.

Issues of statutory construction raise questions of law over which we exercise plenary review. *Bruneau* v. *Seabrook*, 84 Conn. App. 667, 670, 854 A.2d 818, cert. denied, 271 Conn. 930, 859 A.2d 583 (2004). Accordingly, we begin with our well established principles of statutory construction. Our legislature recently enacted No. 03-154, § 1, of the 2003 Public Acts, which provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." In the present case, the relevant statutory text and the relationship of that text to other statutes do not reveal a meaning that is plain and unambiguous.

---

[3] We note at the outset that the defendant has not raised the claim that the first amendment protections of free speech encompass his speech in this case. The issue of whether the defendant's speech is protected under the first amendment, therefore, is not a subject of this opinion. We are mindful, however, that the first amendment protections of free speech do encompass a significant amount of verbal criticisms and challenges directed at police officers. See *Houston* v. *Hill*, 482 U.S. 451, 462, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987).

Accordingly, our analysis is not limited to the statutory language, and we look to other factors relevant to the meaning of § 53a-167a, including the circumstances surrounding its enactment and its purpose. See *Nine State Street, LLC* v. *Planning & Zoning Commission*, 270 Conn. 42, 46, 850 A.2d 1032 (2004).

The state maintains that § 53a-167a proscribes verbal as well as nonverbal conduct that is intended to interfere with a police officer in the performance of his or her duties. The state further contends that a refusal to cooperate is equivalent to interfering with an officer. Thus, the state argues that by refusing initially to identify himself and by remarking that "this isn't Russia. I'm not showing you any" identification, the defendant was guilty of interfering with an officer. Neither the legislative intent nor the weight of judicial authority supports such a broad interpretation of § 53a-167a.

In analyzing the issue, we will first consider whether a refusal to provide one's identification to a police officer on demand can constitute a violation of § 53a-167a. Section 53a-167a (a) provides that "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties."

In ascertaining statutory meaning, we look to a statute's relationship to other legislation. See *Thames Talent, Ltd.* v. *Commission on Human Rights & Opportunities*, 265 Conn. 127, 136, 827 A.2d 659 (2003). "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect

that its action or non-action will have upon any one of them." (Internal quotation marks omitted.) *East Hampton* v. *Dept. of Public Health*, 80 Conn. App. 248, 255–56, 834 A.2d 783, cert. denied, 267 Conn. 915, 841 A.2d 221 (2004); see also *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003). The court is likewise "not permitted to supply statutory language that the legislature may have chosen to omit." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 119, 830 A.2d 1121 (2003).

In that regard, we are aware that the General Assembly has enacted legislation in the motor vehicle context that requires a motor vehicle operator to provide his or her identification to a police officer on demand. General Statutes § 14-217 expressly provides a "stop and identify" requirement for motorists.[4] Had the General Assembly intended legislation to require suspects similarly to identify themselves on demand to officers, it could have done so. The difference between the language used in § 53a-167a and that used in § 14-217, which specifically requires automobile operators to identify themselves to officers, is evidence of a lack of legislative intent to impose the same requirement in § 53a-167a. To conclude to the contrary would in effect read into § 53a-167a the "stop and identify" requirement found in § 14-217. We note that a violation of § 14-217 is an infraction and yet, if such a requirement could be implied in § 53a-167a, the violation would be criminal. We must presume that the legislature was cognizant of the provisions and import of § 14-217 fully when it adopted the provisions of § 53a-167a and that it perceived no conflict between them. Because the legislature declined to include such a requirement in § 53a-

___

[4] General Statutes § 14-217 provides in relevant part: "No person who is operating or in charge of any motor vehicle, when requested by any officer in uniform . . . may refuse to give his name and address . . . ."

167a, we decline to graft onto it a requirement that a suspect must stop and identify himself to a police officer in response to an officer's demand.[5]

With regard to the issue of whether mere declaratory words can constitute interference or obstruction under § 53a-167a, we find instructive decisional law interpreting a similar Connecticut statute, which has since been repealed.[6] General Statutes (Rev. to 1968) § 53-165, the statutory predecessor to § 53a-167a (a), provided for the prosecution of any person "who obstructs, resists or abuses any officer concerned in the administration of justice while in the execution of his office . . . ." In *State* v. *Avnayim*, 24 Conn. Sup. 7, 185 A.2d 295 (1962), the Appellate Division of the Circuit Court affirmed the conviction of a defendant who had refused to obey an order to surrender following his arrest for disorderly conduct, and stated that the word "resist" means to "oppose by direct, active, and quasi-forcible means." (Internal quotation marks omitted.) Id., 12. The court held that "[t]here must be actual opposition or resistance, making necessary, under the circumstances, the use of force. . . . Refusal to obey and surrender when arrested, so as to require the officer to use force, is resistance." (Citations omitted.) Id.

In *State* v. *Beck*, 5 Conn. Cir. Ct. 587, 589, 259 A.2d 149 (1969), the court construed the statutory term "obstructs" in § 53-165 and held that the defendant did

---

[5] Our determination is not at odds with the recent United States Supreme Court decision, *Hiibel* v. *Sixth Judicial District Court of Nevada*, 542 U.S. 177, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004). In that case, the court held that Nevada's "stop and identify" statute, which requires a person detained by an officer under suspicious circumstances to identify himself or herself, does not violate the fourth or fifth amendments to the United States constitution. Id., 190–91. Because the General Assembly has not enacted a similar "stop and identify" statute, *Hiibel* does not apply to the present case.

[6] Public Acts 1971, No. 871, § 129, repealed General Statutes § 53-165, and Public Acts 1971, No. 871, § 51, was codified as General Statutes § 53a-167a.

not commit the offense of resisting an officer when she positioned herself between the officer and her husband, who was being arrested, without making physical contact with the officer. Id. The court examined the statute and its provision that any person who obstructs an officer shall be punished, and concluded that to "obstruct" is to interpose obstacles or impediments to hinder, impede or in any manner intrude or prevent. Id. In other decisions, the Appellate Division of the Circuit Court concluded that mere profanity toward an officer alone does not constitute obstruction or interference with an officer. *State* v. *Harris*, 4 Conn. Cir. Ct. 534, 538–40, 236 A.2d 479 (1967) (construing § 53-165); *State* v. *Neubauer*, 2 Conn. Cir. Ct. 169, 172–74, 197 A.2d 93 (1963) (same).

In the absence of decisions from either this court or the Supreme Court, we look to the decisions of courts in other jurisdictions that have analyzed the words "obstruct," "resist," "hinder" or "endanger" found within statutes similar to § 53a-167a.[7] Those courts have held that those terms are alike in that they imply some affirmative act or exertion and require more than mere declaratory words. See, e.g., *Landry* v. *Daley*, 280 F. Sup. 938, 959–60 (N.D. Ill.), appeal dismissed, 393 U.S. 220, 89 S. Ct. 455, 21 L. Ed. 2d 392 (1968), rev'd on other grounds, 401 U.S. 77, 91 S. Ct. 758, 27 L. Ed. 2d 696 (1971); *Gillison* v. *State*, 254 Ga. App. 232, 232–33, 561 S.E.2d 879 (2002) (finding that any act that directly tends to interfere with, interpose obstacles or impediments, hinder, impede, interrupt in any manner, or prevent public administration of justice constitutes obstruction of police in performing lawful duty); *People*

---

[7] We note that there is not one voice on the issue and that some courts have held that verbal conduct can fall within the ambit of interfering with an officer. See, e.g., *People v. Krum*, 374 Mich. 356, 362, 132 N.W.2d 69, cert. denied, 381 U.S. 935, 85 S. Ct. 1765, 14 L. Ed. 2d 699 (1965). We are persuaded by what we consider to be the better reasoning of those jurisdictions that do not so conclude.

v. *Raby*, 40 Ill. 2d 392, 399, 240 N.E.2d 595 (1968) (finding that crime of resisting arrest involves physical act of resistance that has effect of impeding, hindering or delaying performance of officer's duties), cert. denied, 393 U.S. 1083, 89 S. Ct. 867, 21 L. Ed. 2d 776 (1969). A reasonable and natural construction of the terms "obstruct," "resist," "hinder" and "endanger" reveals that they do not proscribe being verbally defensive or voicing mere declaratory statements, but proscribe some act that imposes an obstacle that may impede, hinder, prevent or substantially delay the performance of the officer's duties. See *Landry* v. *Daley*, supra, 959; *People* v. *Crawford*, 152 Ill. App. 3d 992, 995, 505 N.E.2d 394 (1987) (holding that suspect may inquire as to reason for arrest, may point out officer's mistake, may protest, argue, but may not impede arrest by physical action).

In addition, courts from other jurisdictions have ruled that for speech to rise to the level of obstruction of an officer, it reasonably must be interpreted to be a threat of violence to an officer, which would amount to an obstruction or hindrance. *Ballew* v. *State*, 245 Ga. App. 842, 844, 538 S.E.2d 902 (2000), cert. denied, 2001 Ga. LEXIS 381 (2001); *Warren* v. *Patrone*, 75 Ohio App. 3d 595, 600, 600 N.E.2d 344 (1991) (finding that merely stating, "I'm not going anywhere," or, "I won't go with you," and attempting to walk away does not constitute resisting arrest). Simply arguing with, cursing loudly at and verbally interrupting a police officer while making the arrest of another does not constitute obstruction of a police officer. *Ballew* v. *State*, supra, 842. Although under certain circumstances, lying or intentionally misleading a police officer in the lawful discharge of his or her duty may constitute verbal "obstruction," the officer actually must be hampered in some substantial way. *State* v. *Occhino*, 572 N.W.2d 316, 320–21 (Minn. App. 1997), review denied, 1998 Minn. LEXIS 82 (1998);

*State* v. *Wilson*, 101 Ohio Misc. 2d 43, 46, 721 N.E.2d 521 (1999); see *State* v. *Tomlin*, 609 N.W.2d 282 (Minn. App. 2000), aff'd, 622 N.W.2d 546 (Minn. 2001).

In the present case, the defendant's mere declaratory statements that "this isn't Russia. I'm not showing you any" identification did not amount to interfering with or obstructing the officer's performance of his duties. The defendant did not exhort or incite others in their dealings with an officer. The defendant's statement that "this isn't Russia" cannot reasonably be interpreted to be a threat of violence to the officer. Construing § 53a-167a strictly,[8] we conclude that the legislature did not intend the failure to identify oneself instantly and the voicing of declaratory statements, such as "this isn't Russia," to constitute interference or obstruction under § 53a-167a. No trier of fact, therefore, could reasonably have concluded that the defendant's conduct violated § 53a-167a. We therefore reverse the defendant's conviction under § 53a-167a.

B

The defendant next claims that insufficient evidence was produced at trial to support his conviction of criminal mischief in the third degree. Specifically, he contends that there was insufficient evidence to show that he damaged Winding Brook's fire truck or tampered with it so as to place it in danger of being damaged. We are not persuaded.

Under § 53a-117 (a), "[a] person is guilty of criminal mischief in the third degree when, having no reasonable ground to believe that he has a right to do so, he: (1)

---

[8] We note that the rule of lenity in statutory construction requires penal laws to be construed strictly whenever there is a reasonable doubt as to the scope of a statute. See *State* v. *Sostre*, 261 Conn. 111, 120, 802 A.2d 754 (2002). One of the policies behind the rule is to ensure that the legislature and not the courts define criminal activity. *United States* v. *Wiltberger*, 18 U.S. (5 Wheat.) 76, 95, 5 L. Ed. 73 (1820).

Intentionally or recklessly (A) damages tangible property of another, or (B) tampers with tangible property of another and thereby causes such property to be placed in danger of damage . . . ." Although the defendant claims that there was insufficient evidence to support the court's conclusion, it is clear that he actually would like this court to weigh the testimony and evidence presented at trial differently. That we simply cannot do. "If there is conflicting evidence . . . the fact finder is free to determine which version of the event in question it finds most credible." (Internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 210, 680 A.2d 1243 (1996). "This court cannot sift and weigh evidence. . . . Otherwise, [t]his court would then, by way of fact-finding, be required to adjudicate the validity and the reliability of that evidence. At this stage of the proceedings, we are incapable of making those necessary determinations. . . . Thus . . . the testimony was for the trial court to assess and we have no appropriate role at this level in determining which of the various witnesses to credit." (Citations omitted; internal quotation marks omitted.) *State* v. *Nowell*, 262 Conn. 686, 695–96, 817 A.2d 76 (2003).

The state introduced evidence in the form of a video surveillance tape dated August 2, 2002, which shows the defendant approaching the fire truck and lifting an attached hose. The video shows the defendant near the passenger side of the truck as the passenger side door opened. The video also shows the emergency lights flickering on and off twice while the passenger door was still open. The emergency lights were activated again and left illuminated. Seconds later, the passenger side door closed, and the defendant returned in view of the camera and left the area. The state and the defense stipulated that the emergency lights remained lit for approximately fifty minutes after the defendant left the scene. The defendant even admitted that on August 2,

2002, he stood on the platform of the passenger side door, opened the cab door, leaned into the cab, opened the glove compartment, placed his right hand on the dashboard, left his hand on the seat and looked under the seats. The defendant testified that he was aware that the emergency lights had been activated at some point, but did not attempt to turn them off or notify Winding Brook. Peruta testified that if the emergency lights on the fire truck were activated for a prolonged period, the batteries or the starter motor could be damaged. Winding Brook owned the fire truck, and the defendant did not have permission to go near it.

The court was well within its discretion to credit the state's witnesses' version of events. The state's evidence was not only based on a surveillance video and its witnesses' testimony, but also on the testimony of the defendant. The state presented sufficient evidence showing that the defendant tampered with the fire truck, causing the emergency lights to be activated for fifty minutes, and placing the fire truck's battery and starter motor in danger of being damaged. Construing the evidence in the light most favorable to sustaining the verdict, we conclude that the court reasonably could have concluded that the state presented sufficient evidence to support the defendant's conviction of criminal mischief in the third degree.

## II

We next review the defendant's claim that by convicting him of criminal trespass in the second degree as a lesser offense included within burglary in the third degree, the court abused its discretion by violating his due process right to fair notice. The defendant claims that he did not have fair notice of the court's intent to consider criminal trespass in the second degree as a lesser offense included within burglary in the third degree and, therefore, was unable to offer the affirma-

tive defense of the statute of limitations to that lesser included offense. Prior to reaching the merits of the defendant's claim, we first examine the threshold issue of whether his claim was preserved for review.

The following additional facts are relevant to our analysis. The defendant initially was charged with criminal trespass in the first degree in connection with conduct alleged to have occurred on August 2, 2002, criminal trespass in the first degree and criminal mischief in the second degree in connection with conduct alleged to have occurred on August 7, 2002, and criminal trespass in the first degree and criminal mischief in the second degree in connection with conduct alleged to have occurred on August 14, 2002. On September 2, 2003, the state filed a substitute long form information charging the defendant with ten counts arising from conduct alleged to have occurred on August 2 and 14, 2002.[9] On that same day, the defendant filed a motion to dismiss and objection to the substitute long form information in which he claimed that counts two, seven, eight and nine of the September 2 substitute information were new charges that were barred by the statute of limitations. The court denied the defendant's motion to dismiss without prejudice and informed the defendant that he could renew the motion at an appropriate time. Thereafter, the defendant did not present any evidence in support of his statute of limitations defense and did not renew the motion to dismiss. At the conclusion of the trial, the court did not find the defendant guilty of burglary in the third degree, but did find him guilty of

---

[9] The charges enumerated in the substitute long form information were (1) burglary in the third degree, (2) criminal mischief in the third degree, (3) criminal trespass in the first degree, (4) burglary in the third degree, (5) criminal mischief in the third degree, (6) criminal trespass in the first degree, (7) tampering with a motor vehicle, (8) interfering with an officer, (9) disorderly conduct and (10) attempt to commit criminal mischief in the first degree.

criminal trespass in the second degree as a lesser offense included within burglary in third degree.

The defendant raises his claim for the first time on appeal. This court will not review issues of law that are raised for the first time on appeal. See *State* v. *Gebhardt*, 83 Conn. App. 772, 778, 851 A.2d 391 (2004); see Practice Book § 60-5.[10] "The policies behind the requirement that claims be made at trial in order to be reviewed on appeal . . . are principally to permit the trial court to correct any errors before it is too late, and thus to conserve judicial resources and to avoid the spectacle of the trial court proceedings becoming a Kafkaesque academic test which [the trial judge] may be determined on appeal to have failed because of questions never asked of him or issues never clearly presented to him." (Internal quotation marks omitted.) *State* v. *Gebhardt*, supra, 779.

At the time the court made its ruling regarding criminal trespass in the second degree, the defendant did not object. Moreover, the defendant failed to object to the inclusion of the two counts of burglary in the third degree in the substitute long form information as barred by the statute of limitations. The defendant also failed to raise his argument in any appropriate postjudgment motion and now raises it for the first time in his brief to this court. We will not review his claim.

Because the defendant's claim is raised for the first time on appeal, our review is limited to either plain error review; see Practice Book § 60-5; or review pursuant to the constitutional bypass doctrine of *Evans-Golding*. See *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989); *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973). The defendant has failed, however, to request review of his

---

[10] Practice Book § 60-5 provides in relevant part that "[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . ."

claim under either of those doctrines. "As this court has previously noted, it is not appropriate to engage in a level of review that is not requested." *State* v. *Hermann*, 38 Conn. App. 56, 65, 658 A.2d 148, cert. denied, 235 Conn. 903, 665 A.2d 904 (1995). Accordingly, we decline to review his unpreserved claim of error.[11]

## III

Last, we consider the defendant's claim that the statute of limitations, as set forth in General Statutes § 54-193, barred prosecution under § 53a-117 (a) (1) (A) and § 53a-167a. As noted, on September 2, 2003, the state filed a substitute long form information that included the counts of criminal mischief in the third degree in connection with conduct alleged to have occurred on August 2, 2002, and interfering with an officer in connection with conduct alleged to have occurred on August 14, 2002. The defendant claims that those two charges were wholly new charges that were brought one year after the alleged occurrences and that the state therefore was barred from prosecuting those charges. Again, prior to reaching the merits of the defendant's claim, we first examine whether his claim was preserved for review.

As previously noted, this court is not bound to consider a claim unless it was properly raised at trial or arose subsequent to trial. See Practice Book § 60-5; see *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 333–34, 852 A.2d 703 (2004); see also *State* v. *Johnson*, 214 Conn. 161, 169–71, 571 A.2d 79 (1990). In *Johnson*, for example, the trial court made a preliminary ruling regarding the admissibility of trial testimony of certain witnesses. *State* v. *Johnson*, supra, 165–66. The court expressed its willingness, however, to reconsider

---

[11] We also note that we know of no law, and the defendant cites no law, that requires a judge, in a trial to the court, to inform the defendant of the risk that he or she could be found guilty of a lesser included offense.

its ruling after the trial testimony of each witness and encouraged the defendant to file either a motion to strike or a motion for a mistrial after the testimony of each witness, if appropriate. Id., 166. The defendant sought to strike the testimony of only one witness and did not file a motion for a mistrial. Id., 169–70. Because the court issued only a preliminary ruling at the pretrial hearing and not a final adverse ruling, the court, consequently, considered "[i]t [to be] incumbent on the defendant to seek a definitive ruling on the striking of each witness' testimony after each had testified at trial in order fully to comply with the requirements of our rules of practice for preserving his claim of error with respect to each of those witnesses." Id., 170. In that case, the court found that the defendant had failed to preserve his claims of error by not renewing his motions to strike. Id.

In the present case, the defendant raised the statute of limitations defense by way of a pretrial motion to dismiss. The court, however, denied the defendant's pretrial motion without prejudice and indicated a willingness to consider the motion at a later, more "appropriate" time. After the court preliminarily denied the defendant's motion to dismiss, the defendant failed to renew the motion, to raise the defense at trial or to submit a request to charge thereon. The defendant also did not present evidence in support of a statute of limitations defense.[12] Accordingly, we conclude that the defendant failed to preserve the claim at trial properly, and we decline to address it in this appeal.[13]

---

[12] On that issue, the defendant also has failed to request review pursuant to State v. Golding, supra, 213 Conn. 239–40; see also State v. Evans, supra, 165 Conn. 61; or the plain error doctrine. See Practice Book § 60-5. As noted, it is not appropriate to engage in a level of review that is not requested. State v. Hermann, supra, 38 Conn. App. 65. We decline to initiate such review of our own accord.

[13] The pertinent statute of limitations, General Statutes § 54-193, is not a jurisdictional bar to prosecution. It is an affirmative defense, which the defendant must prove by a preponderance of the evidence and can be waived. State v. Parsons, 28 Conn. App. 91, 97, 612 A.2d 73, cert. denied,

The judgment of conviction of interfering with an officer is reversed and the case is remanded with direction to render judgment of acquittal of that charge. The judgment of conviction of criminal trespass in the second degree and criminal mischief in the third degree is affirmed.

In this opinion the other judges concurred.

223 Conn. 920, 614 A.2d 829 (1992). "The fact that the trial court, in its discretion, entertained the defendant's motion to dismiss prior to trial does not automatically convert an affirmative defense into a right to be free of the trial itself. As an affirmative defense, the statute of limitations provides the defendant with a shield, not against prosecution itself, but against successful prosecution." (Internal quotation marks omitted.) Id. After the trial court denied the defendant's motion to dismiss, the defendant then had the burden to prove his defense, by a preponderance of the evidence, at trial. Id. He failed to raise the defense of the statute of limitations at trial and failed to meet his burden of proof.