JEANETTE POULIN *v.* COMMISSIONER OF
CORRECTION
(AC 27065)

Flynn, C. J., and DiPentima and Berdon, Js.

Argued February 14—officially released August 14, 2007

*Christopher M. Neary*, special public defender, for the appellant (petitioner).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, C. J. The petitioner, Jeanette Poulin, appeals from the judgment of the habeas court denying her petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that she failed to prove that she had received ineffective assistance of counsel.[1] We affirm the judgment of the habeas court.

---

[1] The petitioner also claims for the first time on appeal that her conviction was illegal because the court had not canvassed her on the waiver of the statute of limitations and that counsel had been ineffective in not objecting and assuring that a proper waiver had been made. Nothwithstanding the issue of whether any of these claims are more properly raised on direct appeal, the petitioner cannot raise an entirely new ground for habeas relief for the first time on appeal. Because the petitioner never distinctly raised this claim to the habeas court, and, therefore, the court did not address it, we decline to afford it review. See *Kelley* v. *Commissioner of Correction*, 90 Conn. App. 329, 335, 876 A.2d 600 ("[t]his court is not bound to consider claimed errors unless it appears on the record that the question was distinctly

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. On December 22, 2000, the petitioner was charged with the murder of her six week old son. The charge of murder arose out of an incident that took place more than fourteen years earlier, on August 31, 1986. Evidence presented at the habeas hearing revealed that the victim was born in July, 1986, and found dead in the petitioner's apartment on August 31, 1986. The Bristol police department began an investigation into the death. At this time, the police were denied access to relevant documentation contained within the records of the department of children and youth services, now the department of children and families (department). The chief medical examiner performed the victim's autopsy and discovered a blue cloth fiber in the victim's mouth. The autopsy revealed that the victim suffered multiple petechial hemorrhages in the epicardium, surrounding the heart, and in the visceral pleurae, surrounding the lungs. At the time, the chief medical examiner attributed the victim's death to sudden infant death syndrome. With the release of this finding, the police suspended their investigation.

In March, 1996, the Bristol police department was able to get access to the department's records.[2] The records revealed that the victim's older sister had been removed from the petitioner's care by the department on the basis of allegations of abuse and neglect, which included stuffing a washcloth into her daughter's mouth to quiet her. Afterward, the chief medical examiner reexamined his autopsy report and listed the victim's cause of death as "undetermined." Additionally, the

raised . . . and was ruled upon and decided by the court adversely to the appellant's claim" [internal quotation marks omitted]), cert. denied, 276 Conn. 909, 886 A.2d 423 (2005).

[2] The state claims in its brief that the ten year delay in getting the records was the result of statutory constrictions.

chief medical examiner found that the circumstances surrounding the victim's death were consistent with either manual suffocation or sudden infant death syndrome.

On December 22, 2000, more than fourteen years after the August 31, 1986 incident had taken place, the petitioner was charged with murder in violation of General Statutes § 53a-54a. That crime carries a maximum sentence of sixty years imprisonment and requires that a minimum sentence of twenty-five years imprisonment be imposed. General Statutes § 53a-35a (2); General Statutes § 53a-35b. The crime of murder is not barred by any statute of limitations. Sometime thereafter, the prosecution offered the petitioner a plea bargain whereby she would plead guilty to one count of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3). The prosecution offered a maximum sentence of twenty years, with the petitioner retaining the right to argue for a lesser sentence, not to fall below twelve years.[3] The petitioner accepted the offer and entered a guilty plea pursuant to the *Alford* doctrine.[4] By entering a plea of guilty under a plea agreement reached with the state, the petitioner foreclosed any conviction for murder with its twenty-five year minimum and sixty year maximum sentence. The trial court imposed a total effective sentence of fifteen years imprisonment.

---

[3] Pursuant to General Statutes § 53a-35a (5), manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3) carries a maximum penalty of twenty years.

[4] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Stevens*, 278 Conn. 1, 3 n.2, 895 A.2d 771 (2006).

The petitioner thereafter filed an amended petition for a writ of habeas corpus alleging ineffective assistance of her trial counsel, Kenneth Simon. The habeas court rejected the petitioner's claim of ineffective assistance of counsel but later granted the petition for certification to appeal to this court. This appeal followed. Additional facts will be set forth as necessary.

The petitioner claims that the habeas court improperly concluded that she was not deprived of the effective assistance of counsel. Specifically, the petitioner claims that her guilty plea to the charge of manslaughter in the first degree, due to counsel's ineffectiveness, was not voluntary, knowing and intelligent and was made absent sufficient awareness of the relevant circumstances and likely consequences.[5] The petitioner argues that Simon's advice to plead guilty was based on his erroneous understanding of the law. We disagree.

We first set forth our standard of review. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Baillargeon* v. *Commissioner of Correction,* 67 Conn. App. 716, 720, 789 A.2d 1046 (2002).

"Because a defendant often relies heavily on counsel's independent evaluation of the charges and defenses, the right to effective assistance of counsel

---

[5] The first issue in the petitioner's statement of issues is "whether the habeas court abused its discretion in denying the petitioner's certification to appeal." However, despite the petitioner's contrary claim, the habeas court granted certification to appeal and, therefore, could not be held to have abused its discretion by a purported denial of something it actually granted. We do not further address this issue because the habeas court granted certification to appeal.

includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction. . . .

"A habeas petitioner can prevail on a constitutional claim of ineffective assistance of counsel [only if he can] establish both (1) deficient performance, and (2) actual prejudice. . . . For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), which modified [the] prejudice prong of *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." (Citations omitted; internal quotation marks omitted.) *Baillargeon* v. *Commissioner of Correction*, supra, 67 Conn. App. 721. "To satisfy the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill* v. *Lockhart*, [supra, 59]. . . . Reasonable probability does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome in the case, but he must establish a probability sufficient to undermine confidence in the outcome. *Strickland* v. *Washington*, [supra, 693–94] . . . ." (Citation omitted; internal quotation marks omitted.) *Baillargeon* v. *Commissioner of Correction*, supra, 722.

"To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A petitioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal that the advice was not within the range of competence demanded of attorneys in criminal cases. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Reasonably competent attorneys may advise

their clients to plead guilty even if defenses may exist. . . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance . . . ." (Citations omitted; internal quotation marks omitted.) Id., 721–22. "Because both prongs [of *Strickland*] must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Pierce* v. *Commissioner of Correction*, 100 Conn. App. 1, 11, 916 A.2d 864, cert. denied, 282 Conn. 908, 920 A.2d 1017 (2007).

We conclude that the petitioner has failed to satisfy the first prong of the *Strickland* test for establishing ineffective assistance of counsel. During the petitioner's habeas proceeding, Simon testified that in preparing for trial, he had reviewed the evidence, interviewed potential witnesses, retained a medical expert, conducted research and had the petitioner psychologically evaluated.[6] He testified that he had informed the petitioner that he thought it was not likely that she would be convicted of murder at trial. He further testified that after conducting research on the statute of limitations issue, he had determined that if the petitioner had initially been charged solely with manslaughter, the statute of limitations would bar prosecution.[7] He also noted,

---

[6] The petitioner had been assessed as having low intelligence but also as being competent.

[7] General Statutes § 54-193 provides in relevant part: "(a) There shall be no limitation of time within which a person may be prosecuted for a capital felony, a class A felony or a violation of section 53a-54d or 53a-169.

"(b) No person may be prosecuted for any offense, except a capital felony, a class A felony or a violation of section 53a-54d or 53a-169, for which the punishment is or may be imprisonment in excess of one year, except within five years next after the offense has been committed. No person may be prosecuted for any other offense, except a capital felony, a class A felony or a violation of section 53a-54d or 53a-169, except within one year next after the offense has been committed. . . ."

Accordingly, there was no time period within which the state's charge of murder against the petitioner had to be prosecuted, but a charge of

however, that his research had indicated that in Connecticut the issue was open as to whether the statute of limitations would operate to time bar the manslaughter charge as a lesser offense included within the crime of murder. He testified that he had discussed with the petitioner all the possible scenarios that might occur, which included the possibility that the prosecution might add, as a lesser included offense, a charge of manslaughter in the first degree, and the relative likelihood of conviction on either charge, and the possible penalties the petitioner had faced.

The record indicates that the petitioner's counsel thoroughly investigated the issues and discussed them with her. The petitioner now challenges her counsel's belief that the statute of limitations defense was an undecided issue in Connecticut and that such a belief constitutes ineffective assistance of counsel. "The question is not whether [defense] counsel's interpretation was correct, but only whether it was one a reasonably competent attorney could have made." *Rouillard* v. *Commissioner of Correction*, 35 Conn. App. 754, 761, 646 A.2d 948, cert. denied, 231 Conn. 945, 653 A.2d 827 (1994). "Reasonably competent attorneys may advise their clients to plead guilty even if defenses may exist." *Baillargeon* v. *Commissioner of Correction*, supra, 67 Conn. App. 722. Simon testified that after doing a large amount of research, he had believed that the statute of limitations was a legitimate defense against a charge of manslaughter. He further testified that he wanted to try the case but that he could not guarantee the petitioner that she could not be convicted of manslaughter because there was no case law specifically on point in Connecticut. Because of that lack of appellate authority,

---

manslaughter in violation of General Statutes § 53a-55 (a) (3) was governed by a five year statute of limitations, unless our highest court were to decide that this does not apply to lesser included offenses in cases where the defendant proceeds to trial.

Simon's advice that the issue is unsettled was an interpretation that a reasonably competent attorney could have made. It was possible that the trial court could have determined the issue in a way that was unfavorable to the petitioner, and the precise issue has never been decided on appeal by any Connecticut appellate court.

The petitioner primarily relies on *State* v. *Littlejohn*, 199 Conn. 631, 649, 508 A.2d 1376 (1986), in support of her argument that Simon's performance was deficient because, in her view, contrary to the habeas court's finding, the statute of limitations issue in this case is not unsettled.[8] Our Supreme Court has stated several times that the statute of limitations is an affirmative defense and the burden is on the defendant to prove the elements of the defense by a preponderance of the evidence. See, e.g., *State* v. *Figueroa*, 235 Conn. 145, 177–78, 665 A.2d 63 (1995). In *Littlejohn*, our Supreme Court made clear that the defense of the statute of limitations could be waived by a defendant who sought

[8] The petitioner also cites several other cases as authority. See *State* v. *Ali*, 233 Conn. 403, 660 A.2d 337 (1995) (whether failure to instruct jury as to affirmative defense of statute of limitations improper); *State* v. *Figueroa*, 235 Conn. 145, 665 A.2d 63 (1995) (whether trial court properly denied defendant's motion to dismiss charges against him on grounds that service of process was unreasonably delayed and state failed to prosecute within statute of limitations); *State* v. *Crawford*, 202 Conn. 443, 521 A.2d 1034 (1987) (whether issuance of arrest warrant within period of limitation tolled statute); *State* v. *Harrison*, 34 Conn. App. 473, 642 A.2d 36 (whether trial court improperly failed to dismiss certain count in information because prosecution barred by statute of limitations), cert. denied, 231 Conn. 907, 648 A.2d 157 (1994); *State* v. *Parsons*, 28 Conn. App. 91, 612 A.2d 73 (same), cert. denied, 223 Conn. 920, 614 A.2d 829 (1992). However, a careful reading of these cases reveals that none concerns whether the trier of fact could consider lesser included offenses of a more serious crime charged where the statute of limitations had not run against the more serious crime but had run against the lesser included offense. We also note, specifically, that *State* v. *Aloi*, 86 Conn. App. 363, 376, 861 A.2d 1180 (2004), rev'd on other grounds, 280 Conn. 824, 911 A.2d 1086 (2007), and *State* v. *Cooke*, 42 Conn. App. 790, 802 n.9, 682 A.2d 513 (1996), contain an issue similar to the one at hand, but in both cases we, for various reasons, declined to review the claim.

to plead guilty to a lesser offense that was barred by the statute of limitations. *State* v. *Littlejohn,* supra, 639–40. *Littlejohn,* however, is devoid of any holding concerning whether an offense, which if brought standing alone would be time barred, would be defeated by a statute of limitations defense if charged as a lesser offense included within a greater offense. The petitioner does not cite any case law demonstrating that this is a settled area of the law, and we are unable to find any.

Consistent with *Littlejohn,* the petitioner had the right to waive the affirmative defense of the statute of limitations and to accept the plea agreement for the lesser included offense of manslaughter. Simon had assessed the merits of the prosecution's case and had discussed with the petitioner all the possible scenarios that might have occurred. The evidence against her included the autopsy report, which revealed that the victim had a blue cloth fiber in his mouth and that the manner of death was consistent with either sudden infant death syndrome or manual suffocation. Reports from the department revealed that the petitioner had stuffed washcloths in the mouth of the victim's sister to quiet her cries. The habeas court found that the petitioner had accepted the plea bargain because the evidence against her had been damaging and she had been afraid of being incarcerated for sixty years if convicted of murder.

We additionally conclude that the petitioner has failed to demonstrate that, but for Simon's allegedly deficient performance, she would not have pleaded guilty, but instead would have proceeded to trial. The petitioner claims that no reasonable jury could have concluded that she acted with the requisite specific intent to murder the victim. "The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged." (Internal quotation marks omitted.) *State* v.

*Smith,* 35 Conn. App. 51, 63, 644 A.2d 923 (1994). "Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Citations omitted; internal quotation marks omitted.) Id., 63–64.

By pleading guilty, the petitioner obviated the need for the state to produce any evidence at trial. We therefore concentrate our attention not on what evidence was not produced, but on what factual allegations were in the arrest warrant application and the evidence from the petitioner at the habeas hearing. The petitioner admitted at the habeas hearing that her trial attorney had reviewed the state's evidence with her and that ultimately, "because of the evidence that he had reviewed," she decided to plead guilty. As noted by the habeas court, the petitioner admitted in her testimony that it was her decision to plead guilty and that she took the plea because she was afraid of damaging evidence being presented before the jury, which might result in her conviction of the originally charged crime of murder, and was afraid of being incarcerated for sixty years if convicted.

The allegations contained within the arrest warrant affidavit and the probable cause hearing testimony indicate that the petitioner had abused the victim's older sister by stuffing a washcloth into her mouth to quiet her and had threatened to kill that daughter. The petitioner had repeatedly brought the victim to a hospital, and each time the victim had seemed healthy. The victim's pediatrician believed that the petitioner had taken the victim to the hospital because she had been unable to cope with the pressures of caring for him. The petitioner had stated to a member of the hospital's social

services department that the victim would still be alive if the hospital had kept the victim an additional night, as opposed to having released him on August 30, 1986, the day before his death. After the Bristol police department had been able to get access to the department's records concerning the victim's older sister, the chief medical examiner reexamined his autopsy report and found that the circumstances were consistent with either manual suffocation or sudden infant death syndrome. Furthermore, the victim's pediatrician believed that the death was suspicious and testified at the probable cause hearing that on the basis of a review of all the information, he believed that the victim's death was a homicide and that something had been placed in the victim's mouth to suffocate him. Given the evidence against the petitioner and the finding of the habeas court that the petitioner accepted the plea bargain because the evidence against her was damaging and she was afraid of being incarcerated for sixty years if convicted of murder, the petitioner's claim fails to meet the prejudice prong set forth in *Strickland* v. *Washington*, supra, 466 U.S. 687, as applied in *Hill* v. *Lockhart*, supra, 474 U.S. 52.

We conclude that the court properly denied the petitioner's amended habeas petition for failure to establish the claim of ineffective assistance of counsel.

The judgment is affirmed.

In this opinion DiPENTIMA, J., concurred.

BERDON, J., dissenting. I respectfully dissent. I would grant the writ of habeas corpus and order a new trial for the petitioner, Jeanette Poulin, because she did not have effective assistance of trial counsel as guaranteed by the federal and state constitutions. This

resulted in her pleading guilty to the charge of manslaughter of her infant child, which charge was barred by the statute of limitations.

Fourteen years after the death of her infant son, the petitioner was charged with the murder of the child, a crime for which there is no statute of limitations. There was no evidence that the petitioner intentionally caused the death of her infant son. Indeed, even the trial attorney for the petitioner, during the habeas hearing, conceded that proof of intentional murder was unlikely.

Even if it was proven that the petitioner had caused the child's death by placing a cloth in the child's mouth to quiet him (the only proof of which was a blue cloth fiber found in the child's mouth), as she was accused of doing to another child who was removed from her care, that does not establish the intent necessary to prove murder. See *State* v. *Robertson*, 254 Conn. 739, 783, 760 A.2d 82 (2000) (to act intentionally as required for murder conviction, defendant must have had conscious objective to cause victim's death). The pediatrician's suspicion or belief that the child suffocated also does not establish the necessary intent.

Notwithstanding the claims of the majority, there was not a scintilla of evidence that would support a charge of intentional murder. The majority, for support, focuses on the "factual allegations . . . in the arrest warrant application and the evidence from the petitioner at the habeas hearing." The simple answer to the majority's reliance on the arrest warrant is to read the thirty-three pages of the arrest warrant application.[1] There is not a single allegation or even collective allegations in the application that would support probable

[1] I refrain from reprinting the extensive arrest warrant here because it would be an unnecessary waste of paper; however, my thorough review of the warrant did not reveal any allegations that would support probable cause for intentional murder.

cause for intentional murder. As to the majority's reliance on the petitioner's testimony in the habeas hearing admitting that she had reviewed the state's evidence with her attorney, the simple answer is that she did not have effective assistance of counsel. This, coupled with the fact that she was a person with mental problems and low intelligence who was under the care of a psychiatrist, led her to believe, contrary to the evidence, that the state had a case for intentional murder.

Given the totality of the circumstances, it is not conceivable that the jury would return a verdict of guilty of intentional murder in this case, and, if such a verdict had been returned, it would not have been sustained on appeal. There may have been sufficient evidence to convict the petitioner of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3) ("under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person") or manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1) ("recklessly causes the death of another person"), but the statute of limitations would be a complete defense to these crimes.

The trial attorney's concern was that although the statute of limitations applied to manslaughter, he was not certain whether it could be a defense to manslaughter as a lesser offense included within murder, the offense with which the petitioner originally had been charged. The trial attorney testified: "I don't believe Connecticut has decided that specific issue." Case law from Connecticut was not necessary to guide the trial attorney on this issue. Common sense would dictate that if the statute of limitations is a defense to a crime, it would also be a defense to that particular crime as a lesser included offense. See, e.g., *Askins* v. *United States*, 251 F.2d 909, 912 (D.C. Cir. 1958); *Padie* v. *State*,

557 P.2d 1138, 1140 (Alaska 1976); *People* v. *Picetti*, 124 Cal. 361, 362, 57 P. 156 (1899); *People* v. *Di Pasquale*, 161 App. Div. 196, 198, 146 N.Y.S. 523 (1914); see generally annot., 47 A.L.R.2d 887 (1956). An attorney of reasonable competence would have come to this conclusion.[2] The majority justifies its position by stating that it is possible that the trial court could have determined the issue in a way that was unfavorable to the petitioner; however, we have appellate courts to assure that such errors are corrected.

The trial attorney never advised the petitioner of this common sense conclusion that he should have made as an attorney. Instead, he advised the petitioner to plead guilty to manslaughter and, in effect, to waive the statute of limitations. Simply put, the trial attorney's performance was deficient.

Nevertheless, even if I agreed with the majority, I would grant the petition for habeas corpus and order a new trial for another reason. Although the majority does not reach the issue because it was not raised before the habeas court,[3] the canvass of the petitioner as to her guilty plea did not comport with due process, and trial counsel's failure to object denied her effective assistance of counsel. We have the authority to address the issue even though it was not preserved. Practice Book § 60-5 provides in relevant part: "The [appellate] court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." Furthermore, the rule must be interpreted liberally to "facilitate business and advance justice . . . ." Practice Book § 60-1.

---

[2] If this was not the law, the state could always avoid the statute of limitations as to manslaughter by charging murder and then seeking manslaughter as a lesser included offense.

[3] The special public defender who brought and tried the habeas petition before the habeas court is not the same attorney who represents the petitioner on this appeal.

In this case, we should do so for two other reasons. The habeas attorney on appeal addressed the issue, and counsel for the respondent, the commissioner of correction, although objecting because it was not raised before the habeas court, addressed the substance of the issue. Second, if we do not address this issue, it will be the subject of another petition for ineffective assistance of habeas counsel. See *Lozada* v. *Warden*, 223 Conn. 834, 844–45, 613 A.2d 818 (1992). Simply put, it makes sense to address the issue at this time.

Like the waiver of other statutory rights, "[a]ny waiver of the statute [of limitations] must, of course, be voluntary and intelligent and a waiver presents a question of fact in each case." *State* v. *Littlejohn*, 199 Conn. 631, 641, 508 A.2d 1376 (1986); see also *United States* v. *Wild*, 551 F.2d 418, 424–25 (D.C. Cir.), cert. denied, 431 U.S. 916, 97 S. Ct. 2178, 53 L. Ed. 2d 226 (1977). During the plea proceeding, the only statement by the trial judge that could possibly be construed as obtaining the petitioner's consent to a waiver of the statute of limitations to the charge of manslaughter was the following: "At the time of trial, you would also [have] an opportunity to put on a defense to these charges. Again, there will be no defense because there will be no trial. Do you understand that?" The petitioner expressly replied in the affirmative. Clearly, the foregoing is not sufficient because it did not elicit from the petitioner a knowing, voluntary and intelligent waiver of the statute of limitations defense to manslaughter.[4] See *State* v. *Littlejohn*, supra, 638–39.

In sum, I would conclude that the petitioner has shown that, but for the ineffective assistance of counsel, she would not have pleaded guilty to manslaughter and would have gone to trial. See *Copas* v. *Commissioner*

---

[4] Whether a waiver of a statute of limitations defense to a crime must be in writing, as the petitioner argues, need not be decided.

*of Correction*, 234 Conn. 139, 157, 662 A.2d 718 (1995). I would grant the petition for a writ of habeas corpus, reverse the conviction of manslaughter and order a new trial for the petitioner.

Accordingly, I dissent.